**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| HIGH IQ NETWORKS LLC,<br><br>Plaintiff,<br><br>v.<br><br>DELL TECHNOLOGIES INC. and DELL INC.,<br><br>Defendants. | Civil Action No. 7:26-cv-00388<br><br>**JURY TRIAL DEMANDED** |

---

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff High IQ Networks LLC ("Plaintiff" or "High IQ") makes the following allegations against Defendants Dell Technologies Inc. and Dell Inc. (collectively, "Defendants" or "Dell"):

**INTRODUCTION**

1. This complaint arises from Defendants' unlawful infringement of the following United States patents owned by Plaintiff, which generally relate to network communication technology: United States Patent Nos. 7,660,303 (the "'303 Patent"), 7,808,931 (the "'931 Patent"), 7,876,673 (the "'673 Patent"), 6,952,397 (the "'397 Patent"), 8,009,684 (the "'684 Patent"), and 6,731,607 (the "'607 Patent") (collectively, the "Asserted Patents" or the "Patents-in-Suit").

2. The Asserted Patents represent foundational innovations in carrier-grade network communication technology. The inventions arose from pioneering research and development efforts in the field of packet-based network transport, ring network architectures, and Ethernet-

based access multiplexing systems that have become essential building blocks of modern data center, enterprise, and telecommunications infrastructure.

3. For decades, network operators relied on legacy time-division multiplexing ("TDM") and Synchronous Optical Networking ("SONET") / Synchronous Digital Hierarchy ("SDH") ring architectures to transport voice and data traffic across metropolitan and access networks. These legacy systems, while highly reliable, were rigid, bandwidth-inefficient, and costly to operate and maintain. As demand for data services grew exponentially with the rise of the Internet, the industry recognized the urgent need to transition from circuit-switched TDM networks to packet-based Ethernet transport networks that could more efficiently allocate bandwidth and support diverse data services.

4. This transition from legacy TDM to packet-based Ethernet transport presented formidable engineering challenges. Engineers needed to develop new protocols and architectures that could deliver the carrier-grade reliability, protection switching, and quality of service guarantees expected of telecommunications networks while retaining the cost efficiency and flexibility of Ethernet technology. Among the most significant challenges were: designing resilient ring network topologies for Ethernet transport; developing efficient mechanisms for network interface auto-configuration in access multiplexing systems; engineering traffic management systems for bidirectional ring networks; enabling point-to-multipoint functionality within bridged network environments; preventing the duplication of flooded frames where redundant nodes interconnect Layer 2 domains; and creating high-capacity ring communication architectures capable of serving modern bandwidth demands.

5. The inventors named on the Asserted Patents were among the engineers who solved these challenges. The Asserted Patents produced innovations in carrier Ethernet transport,

ring network protection, redundant interconnection of Layer 2 networks, and network management that made possible the transition from legacy TDM networks to modern packet-based infrastructure.

6. The Asserted Patents cover specific, claimed inventions that address key aspects of this technological evolution, including point-to-multipoint functionality in a bridged network, high-capacity ring communication networks in which a node selects among multiple rings and ring directions on the basis of packet header values, the prevention of frame duplication where two or more interconnect nodes join two networks, communication in a bidirectional ring network with single-direction receiving, and network interface auto-configuration for access multiplexing systems. These patented innovations are now widely practiced in modern data center and enterprise network infrastructure, including in the network switching products, modular server chassis, and network operating systems that Dell manufactures, sells, and supports.

7. Dell describes itself as "a leader in the global technology industry" whose solutions "range from client devices and peripherals to infrastructure solutions across servers, networking, and storage," and states that its "networking portfolio helps our business customers transform and modernize their infrastructure, complementing our storage and AI-optimized and traditional servers offerings." Dell Technologies Inc., Annual Report on Form 10-K for the fiscal year ended January 30, 2026 (filed Mar. 16, 2026), Item 1. Dell's Infrastructure Solutions Group, which includes its networking business, reported revenue of approximately $60.8 billion for that fiscal year. Dell's networking portfolio includes the Dell PowerSwitch families of data center and campus switches, the Dell Networking C9010 chassis switch, the Dell EMC Networking N-Series switches, and the Dell PowerEdge MX7000 modular chassis with its fabric switching

modules, together with the network operating systems that Dell develops and distributes for them: Dell SmartFabric OS10, Dell Networking OS9 (the operating system of the Force10 Networks product line that Dell acquired in 2011), Dell Networking OS6, and the Dell Enterprise SONiC Distribution.

8. Dell manufactures, sells, uses, tests, supports, and instructs its customers to deploy these products with the very features that the Asserted Patents claim: private VLANs that give a bridged network point-to-multipoint functionality; Ethernet VPN multihoming in which two or more switches jointly attach a Layer 2 segment to a fabric and elect a single forwarder to prevent duplicate delivery of flooded frames; the Force10 Resilient Ring Protocol ("FRRP"), under which a switch participates in many rings and selects the ring and direction for a frame by its VLAN; Ethernet Ring Protection in accordance with ITU-T G.8032, including multi-ring and sub-ring topologies; and SmartFabric switch replacement in the PowerEdge MX7000 chassis, in which a replacement switching module receives its configuration from within the chassis fabric. Dell has built a substantial business selling these products, which practice the inventions claimed in the Asserted Patents, to enterprises, service providers, and government entities throughout the United States, including throughout the State of Texas and this District.

9. This Complaint sets out, for each Asserted Patent, at least one exemplary claim and the manner in which the accused Dell products practice each element of that claim, drawn from Dell's own published product documentation, so that Dell has full and fair notice of the infringement alleged. The allegations of infringement are stated in the body of this Complaint and do not depend on any exhibit other than the Asserted Patents themselves, which are attached.

**THE PARTIES**

10. Plaintiff High IQ Networks LLC is a Delaware limited liability company with a principal place of business at 2435 N. Central Expressway, Suite 1200, Richardson, Texas 75080.

11. Defendant Dell Technologies Inc. is a corporation organized and existing under the laws of the State of Texas, with its principal place of business and global headquarters at One Dell Way, Round Rock, Texas 78682. Dell Technologies Inc. was originally incorporated in Delaware on January 31, 2013, under the name Denali Holding Inc. On May 3, 2026, its Board of Directors adopted a plan of conversion to redomesticate the company from Delaware to Texas; its stockholders approved the redomestication at the annual meeting held on June 25, 2026; and, effective July 1, 2026, at 12:01 a.m. Central Time, Dell Technologies Inc. converted into and has since continued in existence as a Texas corporation governed by Texas law. *See* Dell Technologies Inc., Current Report on Form 8-K (filed July 1, 2026), and Exhibit 3.1 thereto (Certificate of Formation of Dell Technologies Inc.). The Certificate of Formation states that the corporation's principal office is at One Dell Way, Round Rock, Texas 78682, and that its registered agent is Corporation Service Company d/b/a CSC-Lawyers Incorporating, 211 East 7th Street, Suite 620, Austin, Texas 78701, through which Dell Technologies Inc. may be served with process.

12. Dell Technologies Inc. is a publicly traded company whose Class C common stock is listed on the New York Stock Exchange under the symbol DELL. In its Annual Report on Form 10-K for the fiscal year ended January 30, 2026, Dell Technologies Inc. states: "Our principal executive offices and global headquarters are located at One Dell Way, Round Rock, Texas." It further states: "Our corporate headquarters is located in Round Rock, Texas," that as of January 30, 2026, it owned 7.2 million square feet and leased 1.0 million square feet of

facilities in the United States, and that it had approximately 97,000 employees. Round Rock, Texas is in Williamson County, within the Western District of Texas.

13. Defendant Dell Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One Dell Way, Round Rock, Texas 78682. On information and belief, Dell Inc. is a wholly owned subsidiary of Dell Technologies Inc. and is the principal operating subsidiary through which Dell's products, including the Accused Instrumentalities identified below, are designed, made, marketed, sold, offered for sale, imported, and supported in the United States. Dell Inc. is registered to do business in the State of Texas and may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

14. Dell Technologies Inc. and Dell Inc. hold themselves out to the public as a single enterprise under the "Dell" and "Dell Technologies" names. The product documentation, specification sheets, user guides, configuration guides, deployment guides, knowledge base articles, and open source disclosures cited in this Complaint are published under the Dell and Dell Technologies names on websites that Dell controls, including www.dell.com, www.delltechnologies.com, infohub.delltechnologies.com, dl.dell.com, i.dell.com, and opensource.dell.com. On information and belief, Dell Technologies Inc. and Dell Inc. have acted in concert with respect to the design, manufacture, marketing, sale, distribution, and support of the Accused Instrumentalities, such that the acts of each alleged herein are attributable to the other.

15. Dell Technologies Inc. and Dell Inc. are properly joined in this action under 35 U.S.C. § 299 because Plaintiff asserts a right to relief against them jointly, severally, and in the

alternative with respect to the same transactions, occurrences, and series of transactions and occurrences relating to the making, using, importing into the United States, offering for sale, and selling of the same Accused Instrumentalities, and because questions of fact common to both Defendants will arise in this action.

## JURISDICTION AND VENUE

16. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284, 285, 286, and 287. This Court has original and exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

17. This Court has general personal jurisdiction over each Defendant. Each Defendant maintains its principal place of business in the State of Texas, at One Dell Way, Round Rock, Texas, and Dell Technologies Inc. is incorporated under the laws of the State of Texas. Each Defendant is therefore at home in Texas and subject to the general jurisdiction of the courts of this State, including this Court.

18. This Court also has specific personal jurisdiction over each Defendant. Defendants have committed acts within the State of Texas and within this District giving rise to this action, and have established minimum contacts with this forum such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Defendants, directly and through subsidiaries, distributors, resellers, channel partners, and other intermediaries, have committed and continue to commit acts of infringement in this State and this District by, among other things, making, using, testing, offering to sell, selling, and importing the Accused Instrumentalities, by providing technical support, training, and deployment services for the Accused Instrumentalities to customers located in this State and this District, and by inducing others in this State and this District to use the Accused Instrumentalities

in an infringing manner. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and derive substantial revenue from goods and services provided to residents of the State of Texas and this District. Defendants are subject to jurisdiction under the Texas Long Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042, and under the Due Process Clause of the United States Constitution.

19. Dell, directly and through subsidiaries and intermediaries, has purposefully and voluntarily placed the Accused Instrumentalities into the stream of commerce through established distribution channels with the intention and expectation that they will be purchased, deployed, and used by enterprises, institutions, and government entities in the State of Texas, including in this District. The Accused Instrumentalities have been and continue to be purchased, deployed, and used in this District.

20. Defendants did not contest personal jurisdiction in the Western District of Texas in *Softex LLC v. Dell Technologies Inc.*, No. 1:22-cv-01309, Dkt. No. 29 ¶¶ 12–15 (W.D. Tex. Mar. 21, 2023).

21. Venue is proper in this judicial district under 28 U.S.C. § 1400(b). Section 1400(b) permits a patent infringement action to be brought in the judicial district where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business. The statute's geographic unit is the judicial district, not a division within it. The Supreme Court held in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258 (2017), that § 1400(b) is the sole and exclusive provision governing venue in patent infringement actions and is not supplemented by the general venue statute, and the Court's analysis operates at the level of the judicial district throughout. The Federal Circuit applied the same district-level measure in *In re BigCommerce, Inc.*, 890 F.3d 978 (Fed. Cir. 2018), holding

that in a state containing multiple judicial districts a domestic corporation resides in the single judicial district of its principal place of business or, failing that, its registered office, and rejecting the contention that corporate residence must be established division by division. Congress eliminated any divisional venue requirement when it repealed 28 U.S.C. § 1393 in 1988, and no decision of the Supreme Court or the Federal Circuit has reimposed one.

22. Venue is proper in this District as to Defendant Dell Technologies Inc. under the first prong of 28 U.S.C. § 1400(b) because Dell Technologies Inc. resides in this District. Dell Technologies Inc. is incorporated in Texas, and its principal place of business is at One Dell Way, Round Rock, Williamson County, Texas, within the Western District of Texas. Under *TC Heartland* and *BigCommerce*, Dell Technologies Inc. therefore resides in this District.

23. Venue is also proper in this District as to each Defendant under the second prong of 28 U.S.C. § 1400(b) because each Defendant has committed acts of infringement in this District and has a regular and established place of business in this District. Dell maintains its global headquarters at One Dell Way, Round Rock, Texas 78682, and operations in Austin, Texas, both of which lie within the Western District of Texas. The Round Rock headquarters is a physical place within this District that Dell owns, that Dell has occupied and operated continuously for decades, that Dell identifies in its filings with the United States Securities and Exchange Commission as its "principal executive offices and global headquarters," and from which Dell conducts its business of designing, developing, marketing, selling, supporting, and managing the sale and distribution of its products, including the Accused Instrumentalities. On information and belief, Dell also maintains additional regular and established places of business within this District, including office, engineering, and sales facilities in Austin, Texas. Each Defendant has committed acts of infringement in this District by making, using, offering to sell,

selling, and importing the Accused Instrumentalities, including by designing, developing, testing, and validating the Accused Instrumentalities and the network operating system features accused herein at its facilities in this District; by using the Accused Instrumentalities in an infringing manner at those facilities; and by marketing, offering to sell, selling, and supporting the Accused Instrumentalities from those facilities to customers in this District and throughout the United States. Each Defendant therefore has a regular and established place of business in this District within the meaning of § 1400(b), which asks whether there is a physical place in the district, whether that place is regular and established, and whether it is the place of the defendant. Each element is measured against the judicial district.

24. On information and belief, Dell has also committed acts of infringement in the Midland-Odessa Division of this District, which comprises the counties of Andrews, Crane, Ector, Martin, Midland, and Upton, 28 U.S.C. § 124(d)(7), by at least selling or offering to sell the Accused Instrumentalities to customers located in the Division. On information and belief, Dell markets, offers to sell, sells, ships, deploys, and supports its products, including the Accused Instrumentalities, to enterprises, energy companies, healthcare providers, educational institutions, and governmental entities located in the Midland-Odessa Division, and those customers deploy and use the Accused Instrumentalities in the Division; Dell employs field sales, account management, and technical support personnel who reside in, are assigned to territories including, and regularly perform their duties within the Division; and Dell's channel partners and resellers market and sell Dell products, including the Accused Instrumentalities, to customers within the Division. Whether Defendants maintain a place of business in the Midland-Odessa Division in particular is not a question the venue statute asks. The division in which a properly venued case is heard is a matter of intra-district assignment, not of statutory venue.

## THE ASSERTED PATENTS

25. On February 9, 2010, United States Patent No. 7,660,303 B2 (the "'303 Patent"), entitled "Point-to-Multipoint Functionality in a Bridged Network," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on Application No. 11/508,599, filed August 22, 2006. The named inventors are Ronen Solomon, Leon Bruckman, Rafi Ram, David Zelig, and Shachar Katz. A true and correct copy of the '303 Patent is attached hereto as Exhibit 1. The '303 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282. The '303 Patent is in force and will expire on January 31, 2028.

26. On October 5, 2010, United States Patent No. 7,808,931 B2 (the "'931 Patent"), entitled "High Capacity Ring Communication Network," was duly and legally issued by the USPTO on Application No. 11/367,231, filed March 2, 2006. The named inventors are David Zelig, Leon Bruckman, Ronen Solomon, Gideon Agmon, and Vladimir Kleiner. A true and correct copy of the '931 Patent is attached hereto as Exhibit 2. The '931 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282. The '931 Patent is in force and will expire on June 22, 2028.

27. On January 25, 2011, United States Patent No. 7,876,673 B2 (the "'673 Patent"), entitled "Prevention of Frame Duplication in Interconnected Ring Networks," was duly and legally issued by the USPTO on Application No. 12/044,158, filed March 7, 2008. The named inventors are Rafi Ram, Leon Bruckman, Ronen Solomon, and Gideon Agmon. A true and correct copy of the '673 Patent is attached hereto as Exhibit 3. The '673 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282. The '673 Patent is in force and will expire on January 20, 2029.

28. On October 4, 2005, United States Patent No. 6,952,397 B2 (the "'397 Patent"), entitled "Communication in a Bidirectional Ring Network with Single-Direction Receiving," was duly and legally issued by the USPTO on Application No. 09/876,414, filed June 7, 2001. The named inventors are Gal Mor, Leon Bruckman, and David Zelig. A true and correct copy of the '397 Patent is attached hereto as Exhibit 4. The '397 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282. The '397 Patent expired on October 31, 2023, at the end of its full term, and Plaintiff seeks damages for infringement of the '397 Patent that occurred before that date and within the period permitted by 35 U.S.C. § 286.

29. On August 30, 2011, United States Patent No. 8,009,684 B2 (the "'684 Patent"), entitled "High Capacity Ring Communication Network," was duly and legally issued by the USPTO on Application No. 12/897,341, filed October 4, 2010, which is a continuation of Application No. 11/367,231, the application that issued as the '931 Patent. The named inventors are David Zelig, Leon Bruckman, Ronen Solomon, Gideon Agmon, and Vladimir Kleiner. A true and correct copy of the '684 Patent is attached hereto as Exhibit 5. The '684 Patent claims patent-eligible subject matter and is presumed valid and enforceable under 35 U.S.C. § 282. The '684 Patent expired on March 2, 2026, at the end of its full term, and Plaintiff seeks damages for infringement of the '684 Patent that occurred before that date and within the period permitted by 35 U.S.C. § 286.

30. On May 4, 2004, United States Patent No. 6,731,607 B1 (the "'607 Patent"), entitled "Network Interface Auto-Configuration in an Access Multiplexing System," was duly and legally issued by the USPTO on Application No. 09/629,664, filed August 1, 2000. The named inventor is Sharon Mantin. A true and correct copy of the '607 Patent is attached hereto as Exhibit 6. The '607 Patent claims patent-eligible subject matter and is presumed valid and

enforceable under 35 U.S.C. § 282. The ’607 Patent expired on October 19, 2022, at the end of its full term, and Plaintiff seeks damages for infringement of the ’607 Patent that occurred before that date and within the period permitted by 35 U.S.C. § 286.

31. All maintenance fees due on each of the Asserted Patents were paid, and none of the Asserted Patents lapsed for nonpayment during the period for which damages are sought. Each of the three expired Asserted Patents expired at the end of its full statutory term, including any patent term adjustment granted by the USPTO.

32. High IQ Networks LLC is the sole and exclusive owner by assignment of all right, title, and interest in and to each of the Asserted Patents, and holds proper and effective ownership of each of them, including the exclusive right to bring this action, the right to seek injunctive relief as to the unexpired Asserted Patents, and the right to sue for and recover all past, present, and future damages for infringement of each Asserted Patent. Plaintiff has standing to bring this action.

33. Neither Defendant has a license to any of the Asserted Patents, either expressly or implicitly, nor does either Defendant enjoy or benefit from any rights in or to any of the Asserted Patents whatsoever.

34. Plaintiff asserts method claims of each Asserted Patent, and the marking provisions of 35 U.S.C. § 287 do not limit the damages recoverable for infringement of those claims.

## THE ACCUSED INSTRUMENTALITIES

35. The terms “Accused Instrumentalities” or “Accused Products” refer to all products, systems, software, and services made, used, tested, imported, sold, offered for sale, or supported by or on behalf of Defendants that practice one or more claims of the Asserted Patents,

and all processes employed by Defendants or their customers, at Defendants' direction and instruction, that practice one or more claims of the Asserted Patents. The Accused Instrumentalities include Dell's data center and campus network switches, chassis switches, modular server chassis and their fabric switching modules, and the network operating systems and management software that Dell develops, distributes, and supports for those products, in the configurations and with the features described in this Complaint.

36. Specifically, and without the benefit of discovery or access to non-public information, Plaintiff identifies the following products, which Defendants make, use, sell, offer for sale, import into the United States, and support, as Accused Instrumentalities that infringe one or more claims of the Asserted Patents:

a. **The OS10 Private VLAN Products**: the Dell PowerSwitch S5248F-ON and all other Dell PowerSwitch switches, including the S5200-ON Series, that run Dell SmartFabric OS10 release 10.5.2.0 or later and that are configured with, or are sold with the capability to be configured with, private VLANs ("PVLANs"), together with the SmartFabric OS10 software that provides the private VLAN feature. Dell states that the private VLAN port mode command is supported in "Supported Releases 10.5.2.0 or later" and that the S5200-ON Series supports up to 7,372 private VLAN domains.

b. **The Enterprise SONiC EVPN Multihoming Products**: the Dell PowerSwitch S5248F-ON and all other Dell PowerSwitch switches that run the Dell Enterprise SONiC Distribution, including release 4.4.0 and later releases, with Ethernet VPN ("EVPN") multihoming, together with the Dell Enterprise SONiC Distribution software and the Dell SmartFabric Manager for SONiC software, including

release 1.4.1, that Dell provides to configure EVPN multihoming on those switches.

c. **The OS9 FRRP Products**: the Dell Networking C9010 chassis switch, including its Route Processor Modules and line cards, the Dell PowerSwitch S4048-ON, and all other Dell Networking and PowerSwitch switches that run Dell Networking OS9 (also called Dell EMC Networking OS9), including releases 9.14.2.x, and that support the Force10 Resilient Ring Protocol ("FRRP"), together with the OS9 software that provides FRRP.

d. **The OS6 Ethernet Ring Protection Products**: the Dell PowerSwitch N3224T-ON and all other Dell EMC Networking N-Series switches, including the N3200-ON Series, that run Dell Networking OS6 (also called Dell EMC Networking OS6) release 6.6.1 or later and that support Ethernet Ring Protection in accordance with ITU-T Recommendation G.8032, including in multi-ring and sub-ring topologies, together with the OS6 software that provides that feature.

e. **The PowerEdge MX7000 SmartFabric Products**: the Dell PowerEdge MX7000 modular chassis populated with the MX9116n Fabric Switching Engine and the MX7116n Fabric Expander Module and operated in SmartFabric Services mode, together with the Dell SmartFabric OS10 software that runs on the MX9116n, including its SmartFabric module replacement workflow, and the Dell OpenManage Enterprise-Modular Edition ("OME-M") chassis management software, including the fabric switch replacement wizard of versions 1.30.00 and later.

37. At least the following claims of the Asserted Patents are asserted against at least the following Dell products:

| **Asserted Patent** | **Claims asserted (exemplary claim in bold)** | **Accused Dell products (representative product first)** |
|---|---|---|
| ’303 Patent (Count I) | At least claims **11**, 1, 15, 16, and 17 | The OS10 Private VLAN Products, including the Dell PowerSwitch S5248F-ON running SmartFabric OS10 with private VLANs |
| ’931 Patent (Count II) | At least claims **29**, 1, 2, 4, 15, and 18 | The OS9 FRRP Products, including the Dell Networking C9010 running OS9 with FRRP |
| ’673 Patent (Count III) | At least claims **18**, 1, 20, 22, and 35 | The Enterprise SONiC EVPN Multihoming Products, including the Dell PowerSwitch S5248F-ON running Dell Enterprise SONiC with EVPN multihoming |
| ’397 Patent (Count IV) | At least claims **9**, 1, 12, and 15 | The OS6 Ethernet Ring Protection Products, including the Dell PowerSwitch N3224T-ON running OS6 with Ethernet Ring Protection (ITU-T G.8032) |
| ’684 Patent (Count V) | At least claims **14**, 1, 16, and 18 | The OS6 Ethernet Ring Protection Products in multi-ring and sub-ring topologies, including the Dell PowerSwitch N3224T-ON running OS6 |
| ’607 Patent (Count VI) | At least claims **1** and 12 (the independent claims) | The PowerEdge MX7000 SmartFabric Products, including the PowerEdge MX7000 with the MX9116n Fabric Switching Engine and the MX7116n Fabric Expander Module in SmartFabric mode |

38. The foregoing identification of Accused Instrumentalities is based on publicly available information presently available to Plaintiff and is not intended to be, and shall not be construed as, an exhaustive or limiting identification of all Dell products, services, systems, features, configurations, software, firmware, or combinations thereof that infringe one or more claims of the Asserted Patents. Plaintiff reserves the right to supplement, amend, or modify this identification at any time, including but not limited to: (a) adding additional accused products, product families, hardware platforms, sub-models, variants, successors, or rebranded versions

identified through fact discovery, expert analysis, or other investigation; (b) adding predecessor, legacy, or discontinued products and software releases for which damages may be recoverable during the applicable infringement period; (c) identifying additional infringing features, modes of operation, or configurations within the products already listed; and (d) identifying third-party products, systems, or services that incorporate, use, or operate in conjunction with the Accused Instrumentalities in a manner that constitutes direct or indirect infringement. Nothing in this identification shall be deemed an admission that the listed products are the only infringing instrumentalities, nor shall the omission of any product be construed as an acknowledgment of non-infringement. Plaintiff reserves the right to identify additional accused products and asserted claims in its infringement contentions served in accordance with the Court's Local Rules and scheduling order.

39. The documents cited in this Complaint were accessed on the dates stated in the citations. Where this Complaint quotes a Dell document, the quotation reproduces the text as Dell published it, and apparent errors in the original are marked *[sic]*. Where a Dell document uses Dell's own vocabulary to describe a function that a claim describes in different words, that difference of vocabulary is not a difference of function; the question in every instance is what the Accused Instrumentalities do, not what Dell calls it. Plaintiff does not have access to Dell's confidential documents or source code. The allegations of Counts I through VI are based on Dell's public documentation and, where so stated, on information and belief, and Plaintiff reserves the right to supplement its support for each claim element once Dell produces its documents and source code in discovery.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 7,660,303

40. Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

41. Plaintiff asserts at least claims 11, 1, 15, 16, and 17 of the ’303 Patent against at least the OS10 Private VLAN Products. Claim 11 is an apparatus claim directed to a group of switches coupled together in a Layer-2 bridged network, and is the exemplary claim addressed below. Claim 1 is the method counterpart of claim 11 and is practiced whenever the OS10 Private VLAN Products are operated as described below. Claim 15 additionally requires that the Layer-2 bridged network comprise an Ethernet network or a virtual Layer-2 network, which the Ethernet private VLAN domain of the OS10 Private VLAN Products is. Claim 16 additionally recites interfaces of a third type through which the type indications of frames are left unchanged, which corresponds to the PVLAN trunk port that Dell documents, through which frames pass with their VLAN tag, and hence their type indication, unchanged. Claim 17 additionally recites discarding a frame that carries the second type indication when the destination address is designated as associated with the second type of interface, which is the isolated-to-isolated drop that Dell documents in the words quoted below. Plaintiff’s identification of claim 11 as the exemplary claim is without prejudice to its assertion of these and other claims of the ’303 Patent in its infringement contentions.

42. Defendants, under 35 U.S.C. § 271(a), directly, literally, and under the doctrine of equivalents, have infringed and continue to infringe at least claim 11 of the ’303 Patent by making, using, testing, selling, offering for sale, and importing into the United States the OS10 Private VLAN Products. Dell designs, manufactures, and sells the PowerSwitch S5248F-ON and the other OS10 Private VLAN Products, installs on them the SmartFabric OS10 software that

provides the private VLAN feature, and thereby makes and sells switches that are configured, and that Dell instructs its customers to configure, in the claimed manner. Dell itself makes and uses the claimed apparatus, namely two or more of its switches coupled together in a Layer-2 bridged network and configured with private VLANs, in the course of developing, testing, validating, demonstrating, and supporting the private VLAN feature, including in the multi-switch private VLAN deployment that Dell's own documentation describes as "spanned across two data centers" and, on information and belief, in the validation and demonstration networks that Dell operates at its facilities, including its facilities in this District.

43. Claim 11 of the '303 Patent recites:

> Apparatus for communication, comprising a group of switches, which are coupled together in a Layer-2 bridged network, each switch comprising: multiple network interfaces, which are configured so that at least one interface of at least one of the switches is configured as a first type of the interfaces, and a plurality of other interfaces are configured as a second type of the interfaces; and a frame processor, which is operative: to create an entry comprising a source address of the frame and a number equal to a type indication of the frame to identify the first interface, and to add the entry to a forwarding database containing an identification of at least a second interface through which the frame should be forwarded and a type designation of the destination address as being associated with the first or second type of the interfaces; upon receiving through a first interface of a given switch a frame comprising a given destination address, to look up the destination address in the forwarding database, and to compare the type designation with a type indication of the frame in order to determine whether to forward the frame through the second interface; upon receiving frames through the interfaces of the first and second types for transmission over the network, to label the received frames with corresponding first and second type indications, and to cause the interfaces to forward the frames through the Layer-2 bridged network responsively to the type indications, by permitting the frames that are labeled with the first type indication to be transmitted through any of the interfaces, while permitting the frames that are labeled with the second type indication to be transmitted through the interfaces of the first type and preventing the frames that are labeled with the second type indication from being transmitted through the interfaces of the second type; and to update the forwarding database using a database learning process responsively to the source address and to the type indication of the frame.

44. The OS10 Private VLAN Products, as exemplified by the Dell PowerSwitch S5248F-ON running SmartFabric OS10 with private VLANs, practice every element of claim 11, as set forth in the following paragraphs.

45. **"Apparatus for communication, comprising a group of switches, which are coupled together in a Layer-2 bridged network."** Dell documents, and instructs its customers to build, a private VLAN domain that spans two or more OS10 switches joined by a tagged inter-switch trunk. Dell states: "To extend the primary and secondary VLANs to a connected device, add a regular switch port in Trunk mode to the VLANs of the PVLAN. The regular switch port in Trunk mode is also called an Inter-Switch Link (ISL) trunk port or PVLAN trunk." Dell SmartFabric OS10 User Guide, Release 10.6.1 ("OS10 User Guide 10.6.1"), "Extend PVLAN domain to another switch," https://www.dell.com/support/manuals/en-us/smartfabric-os10-emp-partner/smartfabric-os-user-guide-10-6-1-x/extend-pvlan-domain-to-another-switch?guid=guid-83c9d2bf-d445-46f9-ab51-b144806f387b&lang=en-us (accessed Sept. 19, 2026). Dell further states: "A PVLAN trunk port extends the PVLAN domain across switches," and "Traffic within a PVLAN is L2 communication." OS10 User Guide 10.6.1, "PVLAN components," https://www.dell.com/support/manuals/en-us/smartfabric-os10-emp-partner/smartfabric-os-user-guide-10-6-1-x/pvlan-components?guid=guid-5cae4ea8-fe47-4dd9-b4da-025fbac57ef9&lang=en-us (accessed Sept. 19, 2026). Dell's own worked example of a multi-switch deployment states: "Here, the private VLAN domain is spanned across two data centers using an ISL trunk port." OS10 User Guide 10.6.1, "Example: PVLAN deployment with L2-L3 boundary at the spine layer," https://www.dell.com/support/manuals/en-us/smartfabric-os10-emp-partner/smartfabric-os-user-guide-10-6-1-x/example-pvlan-deployment-with-l2-l3-boundary-at-the-spine-layer?guid=guid-a5b44f43-2722-45a2-83e7-2cf531600e0d&lang=en-us

(accessed Sept. 19, 2026). Dell also states: "You can configure Virtual Link Trunking (VLT) peer nodes in a PVLAN domain." OS10 User Guide 10.6.1, "Interaction with other features," https://www.dell.com/support/manuals/en-us/smartfabric-os10-emp-partner/smartfabric-os-user-guide-10-6-1-x/interaction-with-other-features?guid=guid-2409bc25-c10f-494a-b2cd-168f0b9167df&lang=en-us (accessed Sept. 19, 2026). Two or more OS10 Private VLAN Products so coupled are a group of switches coupled together in a Layer-2 bridged network.

46. **"each switch comprising: multiple network interfaces."** Each S5248F-ON in the private VLAN domain comprises multiple network interfaces. Dell's specification sheet states: "S5248F-ON: 48x25GbE SFP28 + 4x 100GbE QSFP28 + 2x100GbE QSFP28-DD." Dell PowerSwitch S5200-ON Series Switches Specification Sheet ("S5200-ON Specification Sheet"), https://www.delltechnologies.com/asset/en-us/products/networking/technical-support/dell_emc_networking-s5200_on_spec_sheet.pdf (accessed Sept. 19, 2026). These physical ports, and the port channels formed from them, are the interfaces that SmartFabric OS10 places in promiscuous, secondary (isolated or community), and PVLAN trunk modes.

47. **"which are configured so that at least one interface of at least one of the switches is configured as a first type of the interfaces, and a plurality of other interfaces are configured as a second type of the interfaces."** Dell documents the per-interface configuration command "private-vlan mode {promiscuous | secondary-port}," of which Dell states that the "promiscuous" keyword "Configures the port as a promiscuous port," that a "Secondary port: A secondary port can be an isolated or a community port," and that the command is available in "Supported Releases 10.5.2.0 or later." OS10 User Guide 10.6.1, "private-vlan mode (Port mode)," https://www.dell.com/support/manuals/en-us/smartfabric-os10-emp-partner/smartfabric-os-user-guide-10-6-1-x/private-vlan-mode-port-mode?guid=guid-b122556a-b483-4441-8d77-

2a78af53a144&lang=en-us (accessed Sept. 19, 2026). Dell further states: "A promiscuous port can communicate with any other port in the PVLAN." "An isolated port can only communicate with the promiscuous ports that are in the same PVLAN." "There can be multiple isolated ports within an isolated VLAN." OS10 User Guide 10.6.1, "PVLAN components" (cited above). The promiscuous port is an interface configured as the first type of interface (the hub of the '303 Patent), and the isolated secondary ports are a plurality of other interfaces configured as the second type of interface (the spokes). The mode is a stored per-interface configuration, which is the configured state that the claim recites.

48. **"a frame processor, which is operative:"** Each S5248F-ON comprises a frame processor, namely its frame-forwarding subsystem: the switching hardware that Dell describes as providing line-rate Layer 2 and Layer 3 Ethernet switching, together with the SmartFabric OS10 software that programs that hardware and maintains the MAC address table. Dell states: "Scalable L2 and L3 Ethernet switching with QoS and a full complement of standards-based IPv4 and IPv6 features, including OSPF and BGP routing support"; "Line-rate performance via non-blocking switch fabrics"; and "MAC Addresses: 32K min, 288K max." S5200-ON Specification Sheet (cited above). Dell identifies the packet-processing hardware of the accused switch by vendor, family, and part number: "The S5248F-ON uses the Broadcom Trident3 (BCM56873) network processing unit." Dell Technologies Info Hub, Multitenancy using VRF with Dell SmartFabric OS10 Implementation Guide, "Dell PowerSwitch S5248F-ON," https://infohub.delltechnologies.com/en-us/l/multitenancy-using-vrf-with-dell-smartfabric-os10-implementation-guide/dell-powerswitch-s5248f-on-6/ (accessed Sept. 21, 2026). The OS10 command "show mac address-table" "Displays information about the MAC address table." OS10 User Guide 10.6.1, "show mac address-table," https://www.dell.com/support/manuals/en-

us/smartfabric-os10-emp-partner/smartfabric-os-user-guide-10-6-1-x/show-mac-address-table?guid=guid-6839c482-101d-4fe1-9bfc-af1e2e49c04e&lang=en-us (accessed Sept. 19, 2026). The frame processor receives each frame arriving on an interface, learns and looks up MAC addresses, and decides the interface or interfaces through which the frame is forwarded, performing the operations set forth in the following paragraphs.

49. **"to create an entry comprising a source address of the frame and a number equal to a type indication of the frame to identify the first interface, and to add the entry to a forwarding database."** On learning a source address, OS10 creates a forwarding database entry that holds the source MAC address, the interface on which the frame was received, and the number of the VLAN in which the frame arrived. Dell states: "MAC addresses that are statically configured or dynamically learned are shared between primary and secondary VLANs. The show mac address-table command shows the VLAN where the MAC address was originally learned." Dell continues: "In the following example, the term pv vlan-id indicates the VLAN where the MAC address is originally learned:" followed by the output "Codes: pv <vlan id> private vlan where the mac is originally learnt"; "VlanId Mac Address Type Interface"; "10 00:00:01:01:01:20 dynamic ethernet1/1/2 pv 20"; and "20 00:00:01:01:01:20 dynamic ethernet1/1/2." OS10 User Guide 10.6.1, "View PVLAN information," https://www.dell.com/support/manuals/en-us/smartfabric-os10-emp-partner/smartfabric-os-user-guide-10-6-1-x/view-pvlan-information?guid=guid-ccd0e6fc-9eb7-4c5b-a26c-2c8a30ea27ce&lang=en-us (accessed Sept. 19, 2026). In Dell's example the entry holds the source address 00:00:01:01:01:20, the receiving interface ethernet1/1/2 (the first interface), and the number 20 of the VLAN in which the frame arrived. Inside a private VLAN domain the VLAN number is a type indication, because Dell restricts promiscuous ports to the primary

VLAN and secondary ports to the secondary VLANs, so that the VLAN number of a frame corresponds to the type of the port on which it was received; the ’303 Patent’s specification states that any suitable type indication may be used so long as the other nodes in the network are programmed to recognize it, and gives a field of the IEEE 802.1Q VLAN tag as an example. ’303 Patent at col. 8, ll. 31–37. Dell then prints that same number in its own field (“pv 20”) on the replicated entry.

50. **“containing an identification of at least a second interface through which the frame should be forwarded.”** Dell’s “show mac address-table” output lists, for every learned MAC address, the VLAN, the MAC address, the entry type, and the interface, for example “10 00:00:01:01:01:20 dynamic ethernet1/1/2 pv 20.” OS10 User Guide 10.6.1, “View PVLAN information” (cited above). The “Interface” column (for example, “ethernet1/1/2”) identifies the interface through which frames addressed to that MAC address are forwarded, which is the claimed identification of at least a second interface through which the frame should be forwarded.

51. **“and a type designation of the destination address as being associated with the first or second type of the interfaces.”** A type designation is a stored value associated with an address that indicates whether the address sits behind a first-type or a second-type interface. Dell’s own output prints such a designation on each replicated entry: entries learned on the promiscuous port replicate to the secondary VLANs marked “pv 10” (for example, “20 00:00:01:01:01:10 dynamic ethernet1/1/1 pv 10”), and entries learned on the isolated port replicate to the primary VLAN marked “pv 20” (for example, “10 00:00:01:01:01:20 dynamic ethernet1/1/2 pv 20”). Dell states: “MAC address 00:00:01:01:01:10 learned from primary VLAN replicates to the secondary VLANs.” OS10 User Guide 10.6.1, “View PVLAN

information" (cited above). Dell's multi-switch example prints the same code: "100 00:00:06:00:88:01 dynamic ethernet1/1/1 pv 11." OS10 User Guide 10.6.1, "Example: PVLAN deployment with L2-L3 boundary at the spine layer" (cited above). The same designation appears in the first OS10 release to support private VLANs: "In the following example, the term pv vlan-id indicates the VLAN where the MAC address is originally learned:" and "Codes: pv <vlan id> private vlan where the mac is originally learnt." Dell EMC SmartFabric OS10 User Guide Release 10.5.2, "View PVLAN information," https://www.dell.com/support/manuals/en-us/smartfabric-os10-emp-partner/smartfabric-os-user-guide-10-5-2/view-pvlan-information?guid=guid-ccd0e6fc-9eb7-4c5b-a26c-2c8a30ea27ce&lang=en-us (accessed Sept. 19, 2026). "pv 10" designates an address behind a promiscuous (first-type) port; "pv 20" designates an address behind an isolated (second-type) port. To the extent the stored private VLAN identifier is found not to be literally a type designation, it is its equivalent: it performs the function of recording, for each learned address, whether the address sits behind a promiscuous or a secondary interface; it does so by storing with the entry the identifier of the private VLAN in which the address was learned, which under Dell's own rules corresponds one to one to the interface type; and the result is a forwarding database that holds, for every destination address, an indication of the type of interface with which it is associated. Any difference between storing a VLAN identifier and storing a dedicated type code is insubstantial, because the '303 Patent itself teaches that any suitable indication may be used so long as the nodes recognize it. '303 Patent at col. 8, ll. 31–37.

52. **"upon receiving through a first interface of a given switch a frame comprising a given destination address, to look up the destination address in the forwarding database."** A Layer-2 switch that forwards known unicast frames by MAC address

looks up the destination address of each received frame in its MAC address table; Dell's documented table and the documented forwarding behavior described below cannot operate otherwise. Dell's table and its dynamic entries are documented at OS10 User Guide 10.6.1, "View PVLAN information" (cited above).

53. **"and to compare the type designation with a type indication of the frame in order to determine whether to forward the frame through the second interface."** The forwarding outcome that Dell documents depends on the relationship between the frame's private VLAN and the type of interface behind the destination: a frame originating on an isolated port reaches promiscuous and trunk ports and does not reach other isolated ports, on the same switch and across an inter-switch trunk, on which the VLAN tag carries the frame's type. Dell documents that the forwarding database of each private VLAN is populated according to the VLAN, primary or secondary, in which an address was learned: "MAC address 00:00:01:01:01:10 learned from primary VLAN replicates to the secondary VLANs," and "MAC addresses 00:00:01:01:01:20 and 00:00:01:01:01:30 learned from the secondary VLANs replicate to the primary VLAN." OS10 User Guide 10.6.1, "View PVLAN information," "View replicated MAC addresses" (cited above). Dell's replication rule is the claimed comparison implemented in the structure of the forwarding database: an address learned behind a first-type (promiscuous) port is replicated into every secondary VLAN, so that a lookup in an isolated VLAN finds it and forwards to it, while an address learned behind a second-type (isolated) port is replicated into the primary VLAN only, and never into another secondary VLAN, so that a lookup of that address by a frame labeled with the second type indication does not resolve to a second-type interface. The designation that Dell prints as "pv <vlan-id>" travels with each replicated entry. On receiving a frame, the switch therefore determines whether to forward it

through the interface associated with its destination by relating the frame's private VLAN to the private VLAN in which the destination was learned, which is the comparison this element recites.

54. On information and belief, this element is met because SmartFabric OS10 keeps, with each forwarding database entry, the private VLAN in which the address was learned, prints that value beside the interface as the code "pv vlan-id," which Dell states "indicates the VLAN where the MAC address is originally learned," and populates the table of each VLAN of a private VLAN domain according to the private VLAN in which the address was learned, which in a private VLAN domain corresponds to the type of port, promiscuous ports being in the primary VLAN and isolated and community ports in the secondary VLANs, so that an address behind a promiscuous port is present in every secondary VLAN's table and an address behind an isolated port is present in the primary VLAN's table only. When a frame carrying the isolated VLAN's tag is received, the forwarding pipeline of the S5248F-ON, which Dell identifies as a Broadcom Trident3 network processing unit and which OS10 programs, looks up the destination address in the frame's VLAN and forwards the frame through the destination interface only where the entry's stored private VLAN designation identifies a first-type interface, which is why Dell's documented outcome, that isolated traffic reaches promiscuous and trunk ports and never another isolated port, holds on the same switch and across an inter-switch trunk, where the tag carries the frame's type. The manner in which the Accused Instrumentalities perform that determination is described in documents and source code within Dell's possession, custody, or control.

55. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents. The accused element is the OS10 forwarding decision for a frame

carried in the isolated VLAN. Its function is to determine whether the frame may be sent out of the interface associated with its destination address, permitting delivery toward a first-type (promiscuous) interface and preventing delivery toward a second-type (isolated) interface. Its way is, on information and belief, to relate the private VLAN in which the frame travels (its type indication) to the private VLAN type associated with the destination entry, whether by reading the entry's stored designation directly, by replicating into the isolated VLAN's table only those entries whose designation is first-type, or by an egress filter keyed to the same private VLAN type; each of these evaluates the frame's type against the destination's type. Its result is exactly the claimed outcome, which Dell documents: traffic from an isolated port reaches promiscuous and trunk ports only, on the same switch and across an inter-switch trunk, where the tag carries the frame's type. The differences among those implementation choices are insubstantial to a person of ordinary skill because each makes the same determination from the same two inputs. Further, the '303 Patent's specification teaches that any suitable type indication may be used so long as the other nodes are programmed to recognize it, and gives a field of the IEEE 802.1Q VLAN tag as an example. '303 Patent at col. 8, ll. 31–37. Storing the learning VLAN with the entry and populating each VLAN's table according to that value performs the function of the claimed comparison (deciding, from the stored designation and the frame's indication, whether the frame may be forwarded through the destination interface), in the same way (a per-entry designation tested against the frame's indication on lookup), with the same result (isolated-to-isolated forwarding is prevented and isolated-to-promiscuous forwarding is permitted). Any difference between an explicit compare instruction and a table structure that yields the same decision is insubstantial.

56. **"upon receiving frames through the interfaces of the first and second types for transmission over the network, to label the received frames with corresponding first and second type indications."** A frame received on a promiscuous port is classified into the primary VLAN, and a frame received on an isolated port is classified into the isolated VLAN, and that VLAN value travels in the IEEE 802.1Q tag across the inter-switch trunk. Dell states: "For a regular switch port in Trunk mode, you must tag all VLANs of the PVLAN domain." OS10 User Guide 10.6.1, "Extend PVLAN domain to another switch" (cited above). Dell further states: "You can associate the PVLAN trunk port to both primary and secondary VLANs. This port carries traffic from both the primary and secondary VLANs," and "The primary VLAN ID is used as the PVLAN domain ID." OS10 User Guide 10.6.1, "PVLAN components" (cited above). Dell's "show vlan" output marks VLAN 10 "P," VLAN 20 "I," and VLAN 30 "C" under the legend "P - Primary, C - Community, I - Isolated." OS10 User Guide 10.6.1, "View PVLAN information" (cited above). Within the private VLAN domain the VLAN value is the domain-wide code for the type of the ingress port, which is the claimed labeling of received frames with first and second type indications.

57. **"and to cause the interfaces to forward the frames through the Layer-2 bridged network responsively to the type indications, by permitting the frames that are labeled with the first type indication to be transmitted through any of the interfaces, while permitting the frames that are labeled with the second type indication to be transmitted through the interfaces of the first type and preventing the frames that are labeled with the second type indication from being transmitted through the interfaces of the second type."** This is the claimed asymmetric forwarding rule, stated in Dell's own words in both directions. Dell states: "PVLANs block all traffic to isolated ports except for traffic from promiscuous ports.

Traffic that is received from an isolated port is forwarded only to promiscuous or trunk ports." OS10 User Guide 10.6.1, "Private VLANs," https://www.dell.com/support/manuals/en-us/smartfabric-os10-emp-partner/smartfabric-os-user-guide-10-6-1-x/private-vlans?guid=guid-c10b41b8-0ad4-483f-ac7b-06f1699fac0f&lang=en-us (accessed Sept. 19, 2026). Dell further states: "Any device that is connected to a promiscuous port can communicate with all the ports in the primary and secondary VLANs." "Hosts that are connected to ports in an isolated VLAN cannot communicate directly with each other." "Hosts that are connected to ports in an isolated VLAN can only communicate with promiscuous ports in the primary VLAN." OS10 User Guide 10.6.1, "PVLAN components" (cited above). And: "L2 communication is not permitted between hosts connected to ports in an isolated VLAN and hosts connected to ports in any of the secondary VLANs." OS10 User Guide 10.6.1, "Interaction with other features" (cited above). Primary-VLAN frames (the first type indication) may be transmitted through any interface. Isolated-VLAN frames (the second type indication) may be transmitted through promiscuous ports (the first type) and trunk ports, and are prevented from being transmitted through isolated ports (the second type). On a second switch of the domain, the frame's private VLAN type is known from its tag, so the rule is applied responsively to the type indication that the frame carries.

58. **"and to update the forwarding database using a database learning process responsively to the source address and to the type indication of the frame."** Learning in the OS10 Private VLAN Products is driven by the source address of the frame and by the VLAN in which the frame arrived, and the treatment differs by the type of the arrival VLAN. Dell states: "MAC addresses that are statically configured or dynamically learned are shared between primary and secondary VLANs." "MAC address 00:00:01:01:01:10 learned from primary VLAN

replicates to the secondary VLANs." "MAC addresses 00:00:01:01:01:20 and 00:00:01:01:01:30 learned from the secondary VLANs replicate to the primary VLAN." OS10 User Guide 10.6.1, "View PVLAN information" (cited above). Dell further states: "OS10 supports MAC address movement within a PVLAN domain." OS10 User Guide 10.6.1, "PVLAN components" (cited above). And: "MAC address replication in a PVLAN domain is based on the local configuration of the VLT peer node." OS10 User Guide 10.6.1, "Interaction with other features" (cited above). An address learned in the primary VLAN is replicated into every secondary VLAN, an address learned in a secondary VLAN is replicated into the primary VLAN only, and each replicated entry is stamped with the original type ("pv"). That is a database learning process responsive to the source address and to the type indication of the frame.

59. To the extent any element of the asserted claims of the '303 Patent is found not to be literally present in the Accused Instrumentalities, that element is present under the doctrine of equivalents, because the corresponding element of the Accused Instrumentalities performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed element, and differs from the claimed element, if at all, only insubstantially from the perspective of a person of ordinary skill in the art.

60. Defendants, under 35 U.S.C. § 271(b), have induced and continue to induce third parties, including Dell's enterprise, service provider, and governmental customers, their information technology personnel, and Dell's resellers, channel partners, and systems integrators, in this District and throughout the United States, to directly infringe at least claims 1, 11, 15, 16, and 17 of the '303 Patent by deploying, configuring, and using the OS10 Private VLAN Products in the manner described above. Dell's inducement has been knowing and intentional at least since the filing and service of this Complaint. Dell has taken, and continues to take, active steps

to encourage the infringing use, including by publishing and distributing the Dell SmartFabric OS10 User Guide topics quoted above, which instruct customers, step by step and with worked configuration examples, to create a private VLAN domain, to configure promiscuous and secondary ports, to extend the private VLAN domain across switches by means of a PVLAN trunk port, and to verify the resulting forwarding database; by publishing the private VLAN deployment example "spanned across two data centers" quoted above; by publishing release notes, command references, knowledge base articles, videos, and training materials for the private VLAN feature; and by providing deployment services, technical support, and consulting through which Dell personnel configure, troubleshoot, and support private VLAN domains on customers' switches. Dell knows that customers who follow those instructions build and use the apparatus of claim 11 and perform the method of claim 1, and Dell specifically intends that they do so, because extending a private VLAN domain across two or more switches by means of a PVLAN trunk port has no purpose other than to operate those switches in that manner. Dell's customers directly infringe the '303 Patent when they use the OS10 Private VLAN Products as Dell intends and instructs.

61. Defendants, under 35 U.S.C. § 271(c), have contributorily infringed and continue to contributorily infringe at least claims 1, 11, 15, 16, and 17 of the '303 Patent by selling, offering to sell, and importing into the United States the OS10 Private VLAN Products, including the SmartFabric OS10 software that provides the private VLAN feature, with knowledge that those products constitute a material part of the claimed invention and are especially made and especially adapted for use in an infringing manner. The private VLAN feature of SmartFabric OS10, and in particular its PVLAN trunk port capability, which exists only to extend a private VLAN domain across two or more switches, together with the

promiscuous and secondary port types, the per-entry private VLAN designation, the asymmetric forwarding rule, and the type-responsive learning process described above, is a material part of the invention claimed in the ’303 Patent, is especially made and especially adapted for the infringing use described above, and is not a staple article or commodity of commerce suitable for substantial non-infringing use. Dell has known since at least the filing and service of this Complaint that the feature is so made and adapted. Dell’s customers directly infringe the ’303 Patent when they use that feature.

62. Defendants have had knowledge of the ’303 Patent and of the infringement alleged in this Complaint since no later than the filing and service of this Complaint. Dell’s continued infringement, and its continued inducement of and contribution to infringement, after receiving notice of the ’303 Patent and of the allegations of this Complaint is knowing and intentional.

63. Defendants’ infringement of the ’303 Patent since the filing and service of this Complaint has been and continues to be willful. With knowledge of the ’303 Patent and of the allegations of this Complaint, Dell has continued to make, use, sell, offer for sale, and import the OS10 Private VLAN Products, and to instruct its customers to use them in the infringing manner, in reckless disregard of Plaintiff’s rights and without any good-faith belief that it does not infringe or that the ’303 Patent is invalid. Plaintiff seeks enhanced damages under 35 U.S.C. § 284 for Defendants’ willful infringement after the filing of this Complaint.

64. Defendants’ acts of direct, induced, and contributory infringement of the ’303 Patent have occurred and continue to occur in the United States, including in this District, and have injured and continue to injure and damage Plaintiff. Plaintiff has suffered and continues to suffer damages as a result of Defendants’ infringement of the ’303 Patent. Defendants are liable

to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendants' infringement, but in no event less than a reasonable royalty, together with interest and costs. Defendants' continuing infringement of the '303 Patent, which remains in force until January 31, 2028, has caused and will continue to cause Plaintiff irreparable harm for which there is no adequate remedy at law, and Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283 or, in the alternative, to a compulsory ongoing royalty for the remaining term of the '303 Patent.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO. 7,808,931**

65. Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

66. Plaintiff asserts at least claims 29, 1, 2, 4, 15, and 18 of the '931 Patent against at least the OS9 FRRP Products. Claim 29 is an apparatus claim directed to a ring node for use in a communication network of at least three concentric rings, and is the exemplary claim addressed below. Claim 1 is the method counterpart, practiced whenever the OS9 FRRP Products are operated as described below; claim 2 additionally recites connecting at least one ring node to only part of the rings, which Dell's shared-node ring configurations show; claim 15 is a network claim directed to the network in which the ring nodes operate; and claims 4 and 18 additionally recite adaptively maintaining associations between MAC addresses and egress nodes, which is the standard Layer 2 learning that Dell states operates on each FRRP ring. Plaintiff's identification of claim 29 as the exemplary claim is without prejudice to its assertion of these and other claims of the '931 Patent in its infringement contentions.

67. Defendants, under 35 U.S.C. § 271(a), directly, literally, and under the doctrine of equivalents, have infringed and continue to infringe at least claim 29 of the ’931 Patent by making, using, testing, selling, offering for sale, and importing into the United States the OS9 FRRP Products. Claim 29 is directed to a ring node, which is a single device that Dell makes and sells: the Dell Networking C9010 chassis populated with its line cards and Route Processor Modules and running Dell Networking OS9 with FRRP. The communication network of three concentric rings is the environment “for use in” which the claimed ring node is made, sold, and configured, and the C9010 is made, sold, and documented for that use. Dell itself uses the OS9 FRRP Products in the claimed manner, on information and belief, in the development, testing, validation, and demonstration networks in which Dell exercises the multi-ring FRRP configurations that its documentation describes, and Dell’s customers use them in the same manner under Dell’s instruction.

68. Claim 29 of the ’931 Patent recites:

> A ring node for use in a communication network that includes at least three communication rings in a concentric layout, each including two unidirectional ringlets oriented in mutually-opposite directions, the ring node connected to at least three of the communication rings all of which are connected to a second node, the ring node comprising: at least three line cards, which are arranged to communicate with the respective at least three communication rings; and a network processor, which is arranged to accept a data packet comprising one or more header fields, to determine an egress ring node to which the data packet is to be forwarded, to identify a subset of the concentric rings comprising one or more common rings that are connected to both the ring node and the egress ring node, to select, responsively to a respective value of at least one of the header fields of the data packet, a ringlet of a ring among the one or more common rings, and to forward the data packet to the egress ring node over the selected ringlet.

69. The OS9 FRRP Products, as exemplified by the Dell Networking C9010 running Dell Networking OS9 with FRRP, practice every element of claim 29, as set forth in the following paragraphs.

70. **"A ring node for use in a communication network that includes at least three communication rings in a concentric layout."** Dell documents that one switch can sit on many rings. Dell states: "You can configure up to 255 rings on a system." Dell EMC Networking Configuration Guide for the C9010 Series Version 9.14.2.1 ("C9010 Configuration Guide 9.14.2.1"), "Protocol Overview," https://www.dell.com/support/manuals/en-us/dell-emc-os-9/c9010-9.14.2.1-config/protocol-overview?guid=guid-59cc2a1f-d65b-4a2a-8f16-12116d3ebf8b&lang=en-us (accessed Sept. 19, 2026). Dell further states: "Up to 255 rings are allowed per system and multiple rings can be run on one system." C9010 Configuration Guide 9.14.2.1, "Multiple FRRP Rings," https://www.dell.com/support/manuals/en-us/dell-emc-os-9/c9010-9.14.2.1-config/multiple-frrp-rings?guid=guid-72cbb368-9645-4b30-936e-66e2e00b1966&lang=en-us (accessed Sept. 19, 2026). Dell documents a plurality of rings passing through the same pair of nodes: "In this scenario, an FRRP ring named R1 is configured with VLT Node1 acting as the Master node and VLT Node2 as the transit node. Simillary *[sic]*, an FRRP ring named R2 is configured with VLT Node2 as the master node and VLT node1 as the trasit *[sic]* node." Dell EMC Networking Configuration Guide for the C9010 Series Version 9.14.2.8, September 2020, Rev. A00 ("C9010 Configuration Guide 9.14.2.8"), "FRRP Support on VLT," "Example Scenario," https://www.dell.com/support/manuals/en-us/dell-emc-os-9/c9010-9.14.2.8-config-pub/frrp-support-on-vlt?guid=guid-1ccd54fb-963f-4cfb-a908-1667bbeadabd&lang=en-us (accessed Sept. 21, 2026). Dell states that rings may share links and nodes: "multiple rings can be connected with a common link," and "A switch can act as a Master node for one FRRP group and a Transit for another FRRP group, or it can be a Transit node for both rings." C9010 Configuration Guide 9.14.2.8, "Multiple FRRP Rings" and "Member VLAN Spanning Two Rings Connected by One Switch," https://www.dell.com/support/manuals/en-

us/dell-emc-os-9/c9010-9.14.2.8-config-pub/multiple-frrp-rings?guid=guid-72cbb368-9645-4b30-936e-66e2e00b1966&lang=en-us (accessed Sept. 21, 2026). Rings are in a concentric layout, in the sense the ’931 Patent uses that term, when they pass through the same nodes, as rings 28A, 28B, and 28C of the ’931 Patent’s Figure 1 pass through nodes 24A and 24E. ’931 Patent, Fig. 1 and col. 5, ll. 27–34. Dell documents two rings passing through the same pair of nodes with reciprocal Master and Transit roles, documents that rings may share links and nodes, and states that up to 255 rings may be configured on one system. The claim is directed to a ring node for use in such a network, and the C9010 is made, sold, and configured for that use.

71. On information and belief, this element is met because the C9010 is made, sold, and documented for use in networks of many rings through the same nodes, Dell stating that up to 255 rings may be configured on one system, that rings may share links and nodes, and, in Dell’s own example, that two rings run through the same pair of nodes with reciprocal Master and Transit roles; rings that pass through the same nodes are rings in a concentric layout in the sense the ’931 Patent uses, and Dell and its customers deploy the C9010, under Dell’s instructions, in networks of three or more such rings. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents: three or more FRRP rings configured through the same nodes, each with its own control VLAN and disjoint member VLANs, perform the function of the claimed concentric rings (parallel ring capacity between the same nodes), in the same way (separate rings sharing the same nodes and, where Dell permits, the same links), with the same result (traffic between the nodes distributed over the rings), and any difference between rings that share a common center in a drawing and rings that share the same nodes and links is insubstantial.

72. **"each including two unidirectional ringlets oriented in mutually-opposite directions."** An FRRP ring is a closed loop of full-duplex Ethernet links held logically open at the Master node's Secondary port. Dell states: "In normal operation, the Master node blocks the Secondary port for all non-control traffic belonging to this FRRP group, thereby avoiding a loop in the ring, like STP." C9010 Configuration Guide 9.14.2.1, "Protocol Overview" (cited above). "RHFs never loop the ring because they terminate at the Master node's secondary port." C9010 Configuration Guide 9.14.2.1, "Important FRRP Concepts," https://www.dell.com/support/manuals/en-us/dell-emc-os-9/c9010-9.14.2.1-config/important-frrp-concepts?guid=guid-97187f23-1f9f-41da-b9b3-2251fb3672d4&lang=en-us (accessed Sept. 19, 2026). Dell describes the ring as a two-way path: "With its two-way path to destination configuration, FRRP provides protection against any single link/switch failure and thus provides for greater network uptime." C9010 Configuration Guide 9.14.2.8, "Force10 Resilient Ring Protocol (FRRP)," https://www.dell.com/support/manuals/en-us/dell-emc-os-9/c9010-9.14.2.8-config-pub/force10-resilient-ring-protocol-frrp?guid=guid-28d908fc-e158-403a-819a-6b8adf0d7b0a&lang=en-us (accessed Sept. 21, 2026). Dell describes traffic on the ring in terms of direction at a port and of circulation around the ring: "If the ring is complete, the Master node logically blocks all data traffic in the transmit and receive directions on the Secondary port to prevent a loop. If the Master node detects a break in the ring, it unblocks its Secondary port and allows data traffic to be transmitted and received through it." And: "The Master node checks the status of the Ring by sending ring health frames (RHF) around the Ring from its Primary port and returning on its Secondary port." C9010 Configuration Guide 9.14.2.8, "Protocol Overview," https://www.dell.com/support/manuals/en-us/dell-emc-os-9/c9010-9.14.2.8-config-pub/protocol-overview?guid=guid-59cc2a1f-d65b-4a2a-8f16-12116d3ebf8b&lang=en-us

(accessed Sept. 21, 2026). The claim itself describes a ringlet as one of two unidirectional paths around a ring, the two being oriented in mutually opposite directions, and the ’931 Patent describes each ring as comprising “two unidirectional ringlets oriented in mutually-opposite directions,” a clockwise ringlet and a counterclockwise ringlet, each of which “comprises ring segments” that “carry the traffic from one node 24 to another.” ’931 Patent at col. 5, ll. 15–20. A Dell FRRP ring is a closed loop of Ethernet links each of which carries data in both directions at once, so the ring comprises two sets of unidirectional links oriented in mutually opposite directions, which are the two ringlets this element recites. That the Master node holds one port blocked for data in normal operation is a matter of the ring’s loop-prevention state, not of its structure.

73. On information and belief, this element is met because each FRRP ring is a closed loop of full-duplex Ethernet links, so that the links of the ring carrying data in one direction and the links carrying data in the other are two sets of unidirectional links oriented in mutually opposite directions, which are the two ringlets the claim recites; Dell itself describes the ring as a two-way path, describes transmit and receive directions at the Master node’s Secondary port, and describes frames traveling around the ring from the Primary port and returning on the Secondary port. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents: each FRRP ring provides two transmission paths in mutually opposite directions around the loop, performing the function of carrying traffic either way around the ring, in the way of two unidirectional channels per link, one in each direction, with the result that a frame can reach another ring node by either direction, one direction being used in normal operation and the other after a failure. Holding one point of the loop blocked in normal operation is a protection

state applied to the ringlets, not the absence of one of them, and is an insubstantial difference for this structural element.

74. **“the ring node connected to at least three of the communication rings all of which are connected to a second node, the ring node comprising:”** A C9010 can be on three or more rings. Dell states: “You can run multiple physical rings on the same switch.” C9010 Configuration Guide 9.14.2.8, “Important FRRP Points,” p. 378, available in PDF form at https://dl.dell.com/topicspdf/dell-emc-os-9_Owners-Manual2_en-us.pdf (“C9010 Configuration Guide 9.14.2.8 (PDF)”) (accessed Sept. 22, 2026). Dell states the conditions under which rings may not share links or VLANs: “If multiple rings share one or more member VLANs, they cannot share any links between them,” and, in the same list, “Member VLANs across multiple rings are not supported in Master nodes.” C9010 Configuration Guide 9.14.2.8, “Implementing FRRP,” https://www.dell.com/support/manuals/en-us/dell-emc-os-9/c9010-9.14.2.8-config-pub/implementing-frrp?guid=guid-339ecdb3-5b70-44cf-91d5-04697219dfc9&lang=en-us (accessed Sept. 21, 2026). Rings whose member VLAN sets are disjoint fall outside both conditions and may share links, which is the configuration Dell’s own example uses. Dell documents two rings connected to the same two nodes, with reciprocal roles and different blocked points: “As a result of the VLT Node2 configuration on R2, the secondary interface P2 is blocked for the member VLANs (M11 to Mn).” C9010 Configuration Guide 9.14.2.8, “FRRP Support on VLT,” “Example Scenario” (cited above). The element does not require the rings to carry the same traffic; it requires the ring node to be connected to three rings that are also connected to a second node.

75. On information and belief, this element is met because Dell’s own example places two rings on the same pair of C9010 nodes, Dell’s guidelines permit rings whose member VLAN

sets are disjoint to share links, and Dell permits up to 255 rings per system, so that three or more rings are configured between the same two nodes, each carrying its own member VLANs. On information and belief, the OS9 FRRP Products are deployed, by Dell and by its customers under Dell's instructions, with three or more rings through the same pair of nodes. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents: three rings configured over the same pair of nodes, each carrying its own member VLANs, perform the function of the claimed connection of the ring node and a second node to three rings (parallel paths between those nodes), in the same way (each ring terminating on both nodes), with the same result; whether the rings also share physical links is immaterial to the element.

76. **"at least three line cards, which are arranged to communicate with the respective at least three communication rings."** The C9010 is a chassis populated with line cards whose ports carry Layer 2 traffic, and FRRP ring ports are Layer 2 ports, so ring ports may be placed on different line cards. Dell states: "One RPM provides 120 Gigabits of switch fabric bandwidth to each line card; two RPMs provide 240 Gigabits of bandwidth to each line card." C9010 Configuration Guide 9.14.2.1, "High Availability on Chassis," https://www.dell.com/support/manuals/en-us/dell-emc-os-9/c9010-9.14.2.1-config/high-availability-on-chassis?guid=guid-17d51bc8-5f65-4155-93f8-4d472fd5b3be&lang=en-us (accessed Sept. 19, 2026). "Line card interfaces support Layer 2 and Layer 3 traffic over 10-Gigabit Ethernet and 40-Gigabit Ethernet interfaces." C9010 Configuration Guide 9.14.2.1, "Physical Interfaces," https://www.dell.com/support/manuals/en-us/dell-emc-os-9/c9010-9.14.2.1-config/physical-interfaces?guid=guid-d1783b31-7b8e-4019-ba7a-e6bd66b3a1e8&lang=en-us (accessed Sept. 19, 2026). Dell's warranty page lists the product as "C-Series C9010 [chassis & line cards]." https://www.dell.com/en-us/lp/networking-warranty

(accessed Sept. 19, 2026). Dell's hardware description states: "The C9010 chassis supports the following components:" "Ten half-width Ethernet line cards of the following types:" "6-Port 40 Gigabit Ethernet QSFP+," "24-Port 1/10 Gigabit Ethernet SFP+," and "24-Port 1/10 Gigabit Ethernet Base-T RJ-45." Dell Networking C9010 Getting Started Guide, "C9010 Hardware Description," https://www.dell.com/support/manuals/en-us/networking-c9010/c9010%20getting%20started%20guide-v1/c9010-hardware-description?guid=guid-6a003002-47fe-444a-831b-01652a1fdb2c&lang=en-us (accessed Sept. 19, 2026). Dell states the requirement expressly: "All ring ports must be Layer 2 ports. This is required for both Master and Transit nodes." C9010 Configuration Guide 9.14.2.8, "Implementing FRRP" (cited above). And: "You can configure FRRP on Layer 2 interfaces only." C9010 Configuration Guide 9.14.2.8 (PDF), "Troubleshooting FRRP," "Configuration Checks," p. 382. Because FRRP ring ports may be any Layer 2 ports of the chassis, a C9010 populated with three or more line cards and configured with the ring ports of three rings on three different line cards has at least three line cards arranged to communicate with the respective rings, and on information and belief the OS9 FRRP Products are so deployed. To the extent a particular chassis is populated or configured so that fewer than three cards serve the rings, ports on the same card perform the same function (terminating a ring on the node) in the same way (a pair of Layer 2 ring ports per ring) with the same result, and the difference is insubstantial.

77. **"and a network processor, which is arranged to accept a data packet comprising one or more header fields."** The C9010 receives Ethernet frames on the ports of its line cards and switches them at Layer 2 on each FRRP ring. Dell states: "Layer 2 switching and learning mechanisms operate per existing standards on this ring." C9010 Configuration Guide 9.14.2.1, "Protocol Overview" (cited above). Layer 2 switching reads the header fields of every

frame, including the destination and source MAC addresses and the VLAN tag. Dell states that the packet-processing hardware of the chassis is carried on each card: “A port pipe is a Dell Networking-specific term for the hardware packet-processing elements that handle network traffic to and from a set of front-end I/O ports. The physical, front-end I/O ports are referred to as a port set. The system has 10 switch cards and each card has only one port pipe . . . .” C9010 Configuration Guide 9.14.2.8, “Port Pipes,” https://www.dell.com/support/manuals/en-us/dell-emc-os-9/c9010-9.14.2.8-config-pub/port-pipes?guid=guid-30705dfb-e91b-46fd-905b-7170ca6eaa9d&lang=en-us (accessed Sept. 21, 2026). Dell’s command line interface refers to the same hardware as a unit, and states that units are sometimes called network processing units: “unit defines the Network Processing unit (NPU) of a HiGig port channel,” and “In the C9000 series CLI, NPUs are sometimes referred to as units.” C9010 Configuration Guide 9.14.2.8 (PDF), “show hardware Commands,” p. 312. Dell separately documents a command that “displays internal receive and transmit statistics for a port-pipe unit on a specified line card.” C9010 Configuration Guide 9.14.2.8 (PDF), “Troubleshooting Packet Loss,” “Displaying Line-Card Counters,” p. 321. The network processing units that serve the line-card ports, joined by the switch fabric, are a network processor arranged to accept data packets comprising one or more header fields.

78. **“to determine an egress ring node to which the data packet is to be forwarded.”** Standard bridging resolves a destination MAC address to an egress port. Dell states: “Layer 2 switching and learning mechanisms operate per existing standards on this ring,” and “In normal operation, the Master node blocks the Secondary port for all non-control traffic belonging to this FRRP group, thereby avoiding a loop in the ring, like STP.” C9010 Configuration Guide 9.14.2.8, “Protocol Overview” (cited above). On a ring held open at one

point, each ring port of a node leads to a determinate sequence of ring nodes, so the association a bridge learns between a destination address and the ring port through which it was reached identifies the ring node through which the destination is reached. The claim does not prescribe how the egress node is determined; dependent claim 18 separately recites determining it from an association of MAC addresses with egress nodes. On information and belief, this element is met because Layer 2 switching and learning operate on each FRRP ring per existing standards, as Dell states, so that the C9010 learns, for each destination address, the ring port through which the destination was reached, and on a ring held open at the Master node's Secondary port each ring port leads to a determinate sequence of ring nodes, so that the learned ring port identifies the ring node through which the destination is reached, which is the egress ring node. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents: the accused node resolves a frame's destination MAC address, through its learned forwarding table, to the ring port that leads to the ring node behind which the destination sits, performing the function of determining where on the ring the frame must go, by way of a learned association consulted per frame, with the result that the frame is directed toward the ring node that serves the destination; identifying that node by the egress port that reaches it, instead of by a node identifier, is an insubstantial difference.

79. **"to identify a subset of the concentric rings comprising one or more common rings that are connected to both the ring node and the egress ring node."** Dell documents that each ring is configured on the node with the VLANs it carries, consistently along the ring: "Each ring maintains a list of member VLANs. Member VLANs must be consistent across the entire ring." C9010 Configuration Guide 9.14.2.8, "Important FRRP Concepts," https://www.dell.com/support/manuals/en-us/dell-emc-os-9/c9010-9.14.2.8-config-

pub/important-frrp-concepts?guid=guid-97187f23-1f9f-41da-b9b3-2251fb3672d4&lang=en-us (accessed Sept. 21, 2026). The rings connected to both the ring node and the egress node are the rings whose member VLAN lists, held on the ring node for each ring it belongs to, include the VLAN of the frame, because Dell requires a ring's member VLANs to be consistent across the entire ring, so that a VLAN carried on a ring at the ring node is carried on that ring at every other node of the ring, including the egress node. The claim does not require a topology data structure; dependent claim 19 separately recites one. On information and belief, this element is met because the C9010 holds, for each ring it belongs to, the list of member VLANs that ring carries, Dell requiring that list to be consistent across the entire ring, so that the rings whose member VLAN lists include the VLAN of a frame are the rings connected to both the C9010 and the egress node, and the C9010 identifies them from that configuration. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents: the per-ring member VLAN configuration held on the ring node performs the function of identifying, for a frame, the rings over which it can be carried to the ring node that serves its destination, by way of a stored association between each ring and the VLANs it carries, which Dell requires to be the same at every node of the ring, with the result that the frame is carried only on a ring that reaches the egress node; identifying the common rings from the per-ring VLAN membership, rather than from a table of nodes, is an insubstantial difference.

80. **"to select, responsively to a respective value of at least one of the header fields of the data packet, a ringlet of a ring among the one or more common rings."** In FRRP the direction of travel on a ring follows from which Master port is blocked, and a packet's ring follows from its VLAN's configured membership. Dell states: "Note that ring direction is determined by the Master node's Primary and Secondary ports." C9010 Configuration Guide

9.14.2.1, "Protocol Overview" (cited above). "Each ring maintains a list of member VLANs. Member VLANs must be consistent across the entire ring." C9010 Configuration Guide 9.14.2.1, "Important FRRP Concepts" (cited above). Dell documents that in its active-active configuration the ring is blocked on a per-VLAN or VLAN-group basis: "This active-active FRRP configuration blocks the FRRP ring on a per VLAN or VLAN group basis enabling the configuration to spawn *[sic]* across different set *[sic]* of VLANs." C9010 Configuration Guide 9.14.2.8, "FRRP Support on VLT" (cited above). The selection is made for each frame from a value in its header: the VLAN identifier of the frame determines the ring that carries it and, because the Master node and therefore the blocked point differ per ring, the direction in which the frame travels around the ring. The claim does not require a hash; dependent claim 3 recites one for the method, and claim 29 recites selection responsively to a header field value, which a configured mapping from the VLAN identifier satisfies. On information and belief, this element is met because the VLAN identifier in a frame's header determines which ring carries the frame, each ring maintaining its own list of member VLANs, and, because the Master node and therefore the blocked point differ per ring, as Dell's own example of two rings with reciprocal roles shows, the ring so selected determines the direction in which the frame travels around the ring to its egress node. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents: the configured VLAN-to-ring mapping performs the function of choosing, from a header value, the ring path that carries the frame, by way of a predefined mapping from the header value to a ring, with the result that traffic is distributed across the rings by header value; a configured mapping in place of a computed hash is an insubstantial difference, and dependent claim 3, not claim 29, recites hashing.

81. **"and to forward the data packet to the egress ring node over the selected ringlet."** Dell documents how a frame is forwarded on a ring: "Layer 2 switching and learning mechanisms operate per existing standards on this ring." C9010 Configuration Guide 9.14.2.1, "Protocol Overview" (cited above). Having resolved the destination to a ring port on the ring that carries the frame's member VLAN, the C9010 transmits the frame out of that ring port, in the direction the ring's state leaves open, toward the node that serves the destination. On information and belief, this element is met because the C9010 so transmits each frame using the Layer 2 switching that Dell states operates on each ring, which is forwarding the packet to the egress ring node over the selected ringlet. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents: once a path has been selected, forwarding the frame over it is the same act, performing the same function (delivering the frame to the ring node that serves its destination) in the same way (transmission over the ring path chosen for that frame) with the same result (the frame reaches the egress ring node over that path), whether the path is called a ringlet or a direction of travel on an FRRP ring.

82. To the extent any element of the asserted claims of the '931 Patent is found not to be literally present in the Accused Instrumentalities, that element is present under the doctrine of equivalents, because the corresponding element of the Accused Instrumentalities performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed element, and differs from the claimed element, if at all, only insubstantially from the perspective of a person of ordinary skill in the art.

83. Defendants, under 35 U.S.C. § 271(b), have induced and continue to induce third parties, including Dell's enterprise, service provider, and governmental customers, their information technology personnel, and Dell's resellers, channel partners, and systems integrators,

in this District and throughout the United States, to directly infringe at least claims 1, 2, 4, 15, 18, and 29 of the ’931 Patent by deploying, configuring, and using the OS9 FRRP Products in the manner described above, including by building networks of multiple FRRP rings through the same C9010 nodes. Dell’s inducement has been knowing and intentional at least since the filing and service of this Complaint. Dell has taken, and continues to take, active steps to encourage the infringing use, including by publishing and distributing the Dell EMC Networking Configuration Guide for the C9010 Series, whose FRRP chapter, including the topics “Protocol Overview,” “Implementing FRRP,” “Multiple FRRP Rings,” “Member VLAN Spanning Two Rings Connected by One Switch,” “FRRP Support on VLT,” and “Troubleshooting FRRP” quoted above, instructs customers, step by step and with worked examples, to configure Master and Transit nodes, control and member VLANs, and multiple rings on the same switch and through the same pair of nodes; by publishing corresponding command line references, release notes, knowledge base articles, and training materials; and by providing deployment services and technical support through which Dell personnel configure, troubleshoot, and support FRRP ring networks for customers. Dell knows that customers who follow those instructions make and use the ring node of claim 29 in the network for which it is claimed, build the network of claim 15, and perform the method of claim 1, and Dell specifically intends that they do so, because Dell’s documented multi-ring FRRP configurations have no purpose other than to operate the switches in that manner. Dell’s customers directly infringe the ’931 Patent when they use the OS9 FRRP Products as Dell intends and instructs.

84. Defendants, under 35 U.S.C. § 271(c), have contributorily infringed and continue to contributorily infringe at least claims 1, 2, 4, 15, 18, and 29 of the ’931 Patent by selling, offering to sell, and importing into the United States the OS9 FRRP Products, including the

C9010 chassis and line cards and the Dell Networking OS9 software that provides FRRP, with knowledge that those products constitute a material part of the claimed invention and are especially made and especially adapted for use in an infringing manner. The FRRP feature of Dell Networking OS9, and in particular its support for multiple rings on one switch and through the same pair of nodes, which implements the Master and Transit node roles, the per-ring member VLAN lists, the per-ring blocked port, and the multi-ring operation described above, is a material part of the invention claimed in the ’931 Patent, is especially made and especially adapted for the infringing use described above, and is not a staple article or commodity of commerce suitable for substantial non-infringing use. Dell has known since at least the filing and service of this Complaint that the feature is so made and adapted. Dell’s customers directly infringe the ’931 Patent when they use that feature.

85. Defendants have had knowledge of the ’931 Patent and of the infringement alleged in this Complaint since no later than the filing and service of this Complaint. Dell’s continued infringement, and its continued inducement of and contribution to infringement, after receiving notice of the ’931 Patent and of the allegations of this Complaint is knowing and intentional.

86. Defendants’ infringement of the ’931 Patent since the filing and service of this Complaint has been and continues to be willful. With knowledge of the ’931 Patent and of the allegations of this Complaint, Dell has continued to make, use, sell, offer for sale, and import the OS9 FRRP Products, and to instruct its customers to use them in the infringing manner, in reckless disregard of Plaintiff’s rights and without any good-faith belief that it does not infringe or that the ’931 Patent is invalid. Plaintiff seeks enhanced damages under 35 U.S.C. § 284 for Defendants’ willful infringement after the filing of this Complaint.

87. Defendants' acts of direct, induced, and contributory infringement of the '931 Patent have occurred and continue to occur in the United States, including in this District, and have injured and continue to injure and damage Plaintiff. Plaintiff has suffered and continues to suffer damages as a result of Defendants' infringement of the '931 Patent. Defendants are liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendants' infringement, but in no event less than a reasonable royalty, together with interest and costs. Defendants' continuing infringement of the '931 Patent, which remains in force until June 22, 2028, has caused and will continue to cause Plaintiff irreparable harm for which there is no adequate remedy at law, and Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283 or, in the alternative, to a compulsory ongoing royalty for the remaining term of the '931 Patent.

**COUNT III**

**INFRINGEMENT OF U.S. PATENT NO. 7,876,673**

88. Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

89. Plaintiff asserts at least claims 18, 1, 20, 22, and 35 of the '673 Patent against at least the Enterprise SONiC EVPN Multihoming Products. Claim 18 is an apparatus claim directed to two or more interconnect nodes that connect first and second ring networks, and is the exemplary claim addressed below. Claim 1 is the method counterpart, practiced whenever the Enterprise SONiC EVPN Multihoming Products are operated as described below; claim 35 is a network claim directed to the network in which the interconnect nodes operate; claim 20 additionally recites that the data packet is a flooded packet of which a single copy is forwarded, which is the broadcast, unknown unicast, and multicast ("BUM") traffic for which Dell's

designated forwarder election exists; and claim 22 additionally recites that the extracted attribute comprises a VLAN identifier, which is the tenant VLAN that the Accused Instrumentalities read from each flooded packet. Plaintiff's identification of claim 18 as the exemplary claim is without prejudice to its assertion of these and other claims of the '673 Patent in its infringement contentions.

90. Defendants, under 35 U.S.C. § 271(a), directly, literally, and under the doctrine of equivalents, have infringed and continue to infringe at least claim 18 of the '673 Patent by making, using, testing, selling, offering for sale, and importing into the United States the Enterprise SONiC EVPN Multihoming Products. Dell designs, manufactures, and sells the PowerSwitch S5248F-ON and the other Enterprise SONiC EVPN Multihoming Products, distributes on and for them the Dell Enterprise SONiC Distribution software that provides EVPN multihoming, and provides the Dell SmartFabric Manager for SONiC software that itself configures EVPN multihoming across two or more of those switches, so that Dell's own software makes the claimed combination of interconnect nodes. Dell itself makes and uses the claimed apparatus, on information and belief, in the development, testing, validation, and demonstration networks in which Dell exercises EVPN multihoming, and in the course of reproducing and troubleshooting customer configurations in its technical support operations, as reflected in the Dell knowledge base article quoted below.

91. Claim 18 of the '673 Patent recites:

> A communication apparatus used in a communication network that includes multiple ring nodes arranged in at least first and second ring networks, the apparatus comprising two or more interconnect nodes that connect the first and second ring networks, wherein each interconnect node is configured: to send a synchronization message indicating the status thereof; to receive the synchronization messages of the other interconnect nodes; responsively to receiving the synchronization messages, taking on a forwarding status selected from a group consisting

> of: "forward mine"; "forward none"; and "forward all"; and to accept a data packet, which is sent from a source user node connected to the first ring network; to extract an attribute from the data packet; to apply a predefined mapping function to the extracted attribute so as to select a single interconnect node for forwarding the data packet to the second ring network; and if the interconnect node has a "forward mine" forwarding status, to forward a single copy of the data packet to the second ring network only if the interconnect node is the selected interconnect node, while refraining from forwarding a copy of the data packet if the interconnect node is not the selected interconnect node; if the interconnect node has a "forward none" forwarding status, then refraining from forwarding a copy of the data packet regardless of the predefined mapping function and the selected interconnect node; and if the interconnect node has a "forward all" forwarding status, then forwarding a singled *[sic]* copy of the data packet to the second ring network regardless of the predefined mapping function and the selected interconnect node.

92. The Enterprise SONiC EVPN Multihoming Products, as exemplified by the Dell PowerSwitch S5248F-ON running the Dell Enterprise SONiC Distribution with EVPN multihoming, practice every element of claim 18, as set forth in the following paragraphs.

93. **"A communication apparatus used in a communication network that includes multiple ring nodes arranged in at least first and second ring networks."** The accused deployment joins a host-facing link aggregation group to a leaf-spine VXLAN EVPN fabric. Dell states: "The all-active multihomed VTEPs must be connected to a VXLAN EVPN network using a port channel (LAG) running LACP." Dell SmartFabric Manager for SONiC User Guide 1.4.1 ("SFM for SONiC User Guide 1.4.1"), "EVPN Multihoming," https://www.dell.com/support/manuals/en-us/smartfabric-manager-for-sonic/sfm-141-user-guide-pub/evpn-multihoming?guid=guid-42b97ddd-1f63-4fc7-8311-183fe42ae95f&lang=en-us (accessed Sept. 19, 2026). The specification of the '673 Patent states that "the principles of the present invention can also be used in other network types and applications, such as for interconnecting rings of Ethernet Bridges or for generally interconnecting a chain of network elements (which can be modeled as an 'open ring')," the sentence opening "Although the

embodiments described herein mainly address prevention of frame duplication in RPR networks." '673 Patent at col. 12, l. 64 – col. 13, l. 3. RFC 7432, which Dell states it supports, describes the multihomed side as a bridged network attached to the redundant nodes by a link aggregation group: "If a bridged network is multihomed to more than one PE in an EVPN network via switches, then the support of All-Active redundancy mode requires the bridged network to be connected to two or more PEs using a LAG." RFC 7432, "BGP MPLS-Based Ethernet VPN," sec. 8.5, "Designated Forwarder Election," https://www.rfc-editor.org/rfc/rfc7432.txt (accessed Sept. 21, 2026). Dell states that "EVPN multihoming supports RFCs 7432 and 8365." SFM for SONiC User Guide 1.4.1, "EVPN Multihoming" (cited above). Dell documents that the ring links of its Ethernet Ring Protection switches may themselves be members of a port channel: "Ring links may be configured as part of a port-channel or M-LAG and may participate in an L2 (spanning-tree network) or an L3 (routed) network." Dell EMC Networking N-Series Switches User's Configuration Guide, Version 6.7.0, Rev. A11, April 2021 ("N-Series User's Configuration Guide 6.7.0"), ch. 26, "Ethernet Ring Protection," p. 1043, https://dl.dell.com/manuals/all-products/esuprt_networking_int/esuprt_networking_switches_series/esuprt_networking_switches_powerswitch/networking-n3200-series_user%27s-guide15_en-us.pdf (accessed Sept. 21, 2026). Under the '673 Patent's own usage, which extends the claimed principles to interconnecting rings of Ethernet bridges and to interconnecting a chain of network elements modeled as an open ring, each of the two Layer 2 domains joined by the multihomed switches is a ring network: the host-facing Ethernet segment, in which the attached device and the multihomed switches form a chain closed by the link aggregation group, and the VXLAN EVPN fabric, in which the multihomed switches are joined through the spine layer. The VXLAN EVPN fabric, from which

each multihomed switch receives its copy of a flooded packet, is the first ring network, and the host-facing Ethernet segment, to which the selected switch forwards a single copy of that packet, is the second ring network. On information and belief, the Accused Instrumentalities are also deployed with a bridged network, including a ring of Ethernet bridges such as Dell's own N-Series ring switches, multihomed to the switches by a link aggregation group, which RFC 7432 expressly contemplates.

94. On information and belief, this element is met because the multihomed S5248F-ON switches join two Layer 2 domains, the host-facing Ethernet segment formed by the link aggregation group and the VXLAN EVPN fabric, each of which is a chain of network elements closed through the attachment nodes and is therefore a ring network within the '673 Patent's own usage, which extends the invention to "a chain of network elements (which can be modeled as an 'open ring')" and to "interconnecting rings of Ethernet Bridges"; and because RFC 7432, which Dell states it supports, contemplates a bridged network, including a ring of Ethernet bridges such as Dell's own N-Series ring switches, multihomed to the accused switches by a link aggregation group. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents. The accused network joins two Layer 2 domains, the host-facing Ethernet segment and the VXLAN EVPN fabric, through redundant attachment nodes. Each domain delivers flooded frames to every node attached to it, which is what makes duplicate delivery possible when two nodes join the domains (the function); each side is a multi-node Layer 2 broadcast domain with two or more nodes attached to both (the way); and the result is the same duplication problem and the same need for coordinated forwarding at the attachment nodes. The internal shape of each domain is insubstantial to the claimed apparatus, because every recited operation is performed at the interconnect nodes and none depends on how frames

circulate inside either domain; the ’673 Patent’s own description of an open ring as a chain of network elements shows that the ring form of the joined domains is not what the claimed apparatus acts upon.

95. **“the apparatus comprising two or more interconnect nodes.”** Two to four S5248F-ON switches sharing an Ethernet segment are two or more nodes that jointly connect the host-side Layer 2 segment to the fabric. Dell states: “You can configure up to four VTEPs together for EVPN-based active/active access redundancy,” and “The multihomed VTEPs in the port channel create an Ethernet segment.” SFM for SONiC User Guide 1.4.1, “EVPN Multihoming” (cited above). Dell’s compatibility matrix lists four as the maximum number of VTEPs in an Ethernet segment for the S5248F-ON. Dell Enterprise SONiC Distribution Compatibility Matrix Release 4.4.0 (Aug. 2024, Rev. A00), Table 10, https://www.delltechnologies.com/asset/en-us/products/networking/technical-support/enterprise-sonic-features-and-supported-platforms-matrix.pdf (accessed Sept. 19, 2026). Dell’s support knowledge base shows the configuration in customer use: “When using Ethernet Virtual Private Network (EVPN) MultiHoming (MH) with PortChannel interfaces running SONiC, customers may experience a delay or failure in MAC address synchronization across Virtual Tunnel End Points (VTEPs) during firewall failover scenarios,” and lists “Enterprise SONiC Distribution” under Affected Products. Dell KB article 000379160, “Dell Networking MAC Table Not Synced for EVPN MultiHoming PortChannel on SONiC,” https://www.dell.com/support/kbdoc/en-us/000379160/dell-networking-mac-table-not-synced-for-evpn-multi-homing-portchannel-during-firewall-failover-on-sonic (accessed Sept. 19, 2026).

96. **“that connect the first and second ring networks.”** The multihomed S5248F-ON switches (VTEPs) are the nodes that connect the two Layer 2 domains: the VXLAN EVPN

fabric, which is the first ring network, and the host-facing Ethernet segment formed by the LACP port channel, which is the second ring network. "The all-active multihomed VTEPs must be connected to a VXLAN EVPN network using a port channel (LAG) running LACP." "The multihomed VTEPs in the port channel create an Ethernet segment." SFM for SONiC User Guide 1.4.1, "EVPN Multihoming" (cited above). Traffic between the two domains passes through those switches. To the extent this element is found not to be literally present, the multihomed Dell VTEPs perform the function of the claimed interconnect nodes, joining the two Layer 2 domains, in the same way, by each being attached to both domains at once, with the same result that traffic can pass between the domains through any of them, and whether each joined domain is wired as a ring is an insubstantial difference for the claimed interconnect-node functions.

97. **"wherein each interconnect node is configured: to send a synchronization message indicating the status thereof."** Each multihomed switch advertises its attachment to the Ethernet segment and withdraws the advertisement when its link fails. Dell states: "The Ethernet Auto-Discovery Ethernet VPN Instance (EAD EVI) feature enables the advertisement of the Ethernet Segment Identifier (ESI) and the associated EVPN instance." SFM for SONiC User Guide 1.4.1, "Configure EVPN Multihoming," https://www.dell.com/support/manuals/en-us/smartfabric-manager-for-sonic/sfm-141-user-guide-pub/configure-evpn-multihoming?guid=guid-5c0ace5a-00ac-4f86-a31a-efffcd3bb12e&lang=en-us (accessed Sept. 19, 2026). Dell states that "EVPN multihoming supports RFCs 7432 and 8365." SFM for SONiC User Guide 1.4.1, "EVPN Multihoming" (cited above). RFC 7432 requires each provider edge node attached to a segment to advertise an Ethernet Segment route and to withdraw it on failure: "In the case of link or port failure, the affected PE withdraws its Ethernet Segment route." RFC

7432, "BGP MPLS-Based Ethernet VPN," sec. 8.5, "Designated Forwarder Election" (cited above). The open-source design document of the project from which Dell's operating system is derived states: "Using EVPN Type-4 route, FRR constructs list of participating VTEPs for each ESI." SONiC open-source project, "EVPN VxLAN Multihoming" High Level Design Document, Rev 1.6, https://github.com/sonic-net/SONiC/blob/master/doc/vxlan/EVPN/EVPN_VxLAN_Multihoming.md (accessed Sept. 19, 2026). Dell states the origin of the accused operating system: "The Dell Networking Enterprise SONiC distribution is a Debian Linux based operating system derived from the open source 'Software for Open Networking in the Cloud' project." Dell knowledge base article 000263481, "PowerSwitch: Enterprise SONiC: Getting Started and Basics Guide," Version 5, last modified June 24, 2026, "Hardware Compatibility," https://www.dell.com/support/kbdoc/en-us/000263481/dell-networking-enterprise-sonic-getting-started-and-basics-guide (accessed Sept. 21, 2026). Dell's own open source compliance disclosure for the accused release names the routing suite it ships: "PACKAGE NAME: frr" and "PACKAGE VERSION: 8.2.2-sonic-0," and the companion disclosure for the same release names the Ethernet segment multihoming source file within that suite, "bgpd/bgp_evpn_mh.c." Dell open source license manifest, Dell_Networking/SONiC 4.4.0, https://opensource.dell.com/releases/Dell_Networking/SONiC/4.4.0/license.manifest_4.4.0, and https://opensource.dell.com/releases/Dell_Networking/SONiC/4.4.0/LICENSES.txt (accessed Sept. 21, 2026). The Ethernet Segment and Ethernet Auto-Discovery advertisement that each multihomed VTEP originates and withdraws is a synchronization message indicating the status of the node: it tells the peer nodes whether the sending node is attached to the shared segment and able to forward for it. To the extent a route advertisement is found not to be literally a

synchronization message, it is its equivalent, because the claim defines the message by what it indicates, and the advertisement performs the same function (telling the peers whether the sender is attached and able to forward) in the same way (a control message sent by each node to its peers and withdrawn on link or port failure) with the same result (every node knows the current status of the others).

98. **"to receive the synchronization messages of the other interconnect nodes."** Dell documents that each switch receives its peers' messages and acts on their absence by declaring the peer down. Of the "Neighbor HoldTime" setting Dell states: "After the last keep alive message is received, the system waits for the configured amount of time before declaring the EVPN peer as inactive or down." SFM for SONiC User Guide 1.4.1, "Configure EVPN Multihoming" (cited above). Reception is the reciprocal of the sending element above. To the extent this element is found not to be literally present, each Dell VTEP's receipt of its peers' EVPN control messages performs the function of learning the status of the other nodes attached to the same Ethernet segment, by way of receipt and processing of control messages sent by those nodes, with the result of knowledge of peer status that drives the node's own forwarding role on the segment, and that the messages are BGP EVPN advertisements and keepalives rather than a purpose-built synchronization protocol is an insubstantial difference.

99. **"responsively to receiving the synchronization messages, taking on a forwarding status selected from a group consisting of: 'forward mine'; 'forward none'; and 'forward all'."** In normal operation each multihomed switch takes on, for each segment, the forwarding status that the election gives it. Dell documents a designated forwarder and, by implication, non-designated forwarders: "The switch with the highest DF preference value is the designated forwarder for that ESI." SFM for SONiC User Guide 1.4.1, "Configure EVPN

Multihoming" (cited above). The open-source design document states: "If EVPN_DF_TABLE entry is not present, the switch will not forward any BUM traffic to the EVPN MH Ethernet segment," and "The purpose of DF election is to elect one of the VTEPs among the participating VTEPs for a given Multihomed Ethernet-segment that is responsible for forwarding the BUM traffic." SONiC open-source project, "EVPN VxLAN Multihoming" High Level Design Document, Rev 1.6 (cited above). The routing suite that Dell's own disclosure identifies documents the forwarding role each node takes after the election: "Type-4 (ESR) routes are used for Designated Forwarder (DF) election. DFs forward BUM traffic received via the overlay network," and, later in the same subsection, "BUM traffic is rxed via the overlay by all PEs attached to a server but only the DF can forward the de-capsulated traffic to the access port. To accommodate that non-DF filters are installed in the dataplane to drop the traffic." FRRouting User Guide, release 8.2.2, "BGP," "Ethernet Virtual Network - EVPN," "EVPN Multihoming," "BUM handling," https://github.com/FRRouting/frr/blob/frr-8.2.2/doc/user/bgp.rst (accessed Sept. 21, 2026). The suffix "-sonic-0" in Dell's disclosure denotes a build of release 8.2.2 for the SONiC project, and the documentation of upstream release 8.2.2 describes what that release does. The source file of the same routing suite documents states in which the node blocks all flooded traffic whatever the election result: "if oper-state is down DF filtering must be on. when the link comes up again dataplane should block BUM till FRR has had the chance to run DF election again," and "ES was just created; we need to wait for the peers to rx the our *[sic]* Type-4 routes and for the switch to import the peers' Type-4 routes." FRRouting source file zebra/zebra_evpn_mh.c, release 8.2.2, function zebra_evpn_es_run_df_election, https://github.com/FRRouting/frr/blob/frr-8.2.2/zebra/zebra_evpn_mh.c (accessed Sept. 21, 2026). Dell documents the corresponding setting in its own words. Of the Startup Delay setting

Dell states: "The system waits for the configured amount of time before enabling data plane forwarding. This delay allows the EVPN control plane to become ready, ensuring that BGP sessions and EVPN routes have fully converged. The default value is 300 s." SFM for SONiC User Guide 1.4.1, "Configure EVPN Multihoming" (cited above). RFC 7432, which Dell states it supports, provides that a peer that can no longer forward withdraws its route: "In the case of link or port failure, the affected PE withdraws its Ethernet Segment route." RFC 7432, "BGP MPLS-Based Ethernet VPN," sec. 8.5, "Designated Forwarder Election" (cited above). The code base Dell ships provides that only a node that has advertised its Ethernet Segment route takes part in the election: "Only VTEPs that have advertised the ESR can participate in DF election." FRRouting source file zebra/zebra_evpn_mh.c, release 8.2.2, function zebra_evpn_es_run_df_election (cited above). The three forwarding statuses the claim recites correspond to the three conditions Dell's multihomed switch takes on responsively to the messages it receives from its peers. In normal operation the node forwards flooded traffic to a segment only where the election has selected it for that segment and drops such traffic where it has not, which is forwarding selectively in accordance with the mapping function, the "forward mine" status; the specification of the '673 Patent defines the "forward mine" state as the state in which the node forwards the packets selectively based on the mapping function. '673 Patent at col. 11, ll. 11–21. During the Startup Delay, while the link is down, and while the election delay runs, the node forwards no flooded traffic regardless of the election, the "forward none" status. When a peer withdraws its Ethernet Segment route, it no longer takes part in the election, the election is run again among the nodes that remain, and the node that remains is the forwarder for all flooded traffic to the segment regardless of the assignment that applied before, which is the "forward all" status.

100. On information and belief, this element is met because each multihomed S5248F-ON, responsively to the Ethernet Segment and Ethernet Auto-Discovery advertisements it receives from its peers, takes on one of three forwarding statuses that Dell and the code base Dell ships document: in normal operation it forwards flooded traffic to a segment only where the election has selected it for that segment and drops such traffic where it has not, which is the "forward mine" status as the '673 Patent defines it; during Dell's Startup Delay, while its link is down, and while the election delay runs, it forwards no flooded traffic regardless of the election, which is the "forward none" status; and when its peer withdraws its Ethernet Segment route the election is run again among the nodes that remain and the switch that remains is the forwarder for all flooded traffic to the segment regardless of the assignment that applied before, which is the "forward all" status. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents. The forwarding role each multihomed VTEP takes for a shared segment after exchanging EVPN advertisements, designated forwarder or non-designated forwarder, performs the function of fixing, from the peers' messages, whether the node forwards flooded traffic, by way of a role taken responsively to received control messages, with the result that a node that is the elected forwarder for every segment it serves forwards all such traffic, a node that is elected for none forwards none, and a node that is elected for some segments and not others forwards only the traffic mapped to it. The '673 Patent's own definition of the three states is met by a node that in normal operation forwards only where it is the elected forwarder, that forwards no flooded traffic during its startup delay or while its link is down, and that forwards everything for the segment when its peer has withdrawn; whether that node is described as being in a "forward mine" state or as a designated forwarder is a difference of vocabulary, not of function, way, or result.

101. **"and to accept a data packet, which is sent from a source user node connected to the first ring network."** Each multihomed switch accepts the flooded packet that originates from a host on the other side of the fabric; that is why a designated forwarder is needed at all. RFC 7432 describes every provider edge node on a multihomed segment receiving multi-destination traffic, with the non-designated forwarders dropping it: "All non-DF PEs continue to drop multi-destination traffic in the egress direction towards that <ES, VLAN> or <ES, VLAN bundle>." RFC 7432, "BGP MPLS-Based Ethernet VPN," sec. 8.5, "Designated Forwarder Election" (cited above). Dell states that "EVPN multihoming supports RFCs 7432 and 8365," and Dell's feature table for the same page marks BUM traffic forwarding as supported. SFM for SONiC User Guide 1.4.1, "EVPN Multihoming" (cited above). To the extent this element is found not to be literally present, each multihomed Dell VTEP's acceptance of a copy of a flooded frame sent by a host in the other Layer 2 domain performs the function of taking in the packet on which the forwarding decision is made, in the way that each of the redundant nodes receives its own copy of the same packet, with the result that every node attached to the segment holds a copy and must decide whether to forward it, which is the premise of the claimed decision.

102. **"to extract an attribute from the data packet."** To decide whether it should forward a received copy of a flooded frame, a multihomed switch must read values out of that frame. The routing suite Dell identifies documents a second filter on received copies, which distinguishes copies by the peer from which they were received: "Similarly traffic received from ES peers via the overlay cannot be forwarded to the server. This is split-horizon-filtering with local bias." FRRouting User Guide, release 8.2.2, "BGP," "Ethernet Virtual Network - EVPN," "EVPN Multihoming," "BUM handling" (cited above). Dell requires the identifiers on which

those decisions turn to be configured identically on every multihomed switch: "Ensure that the configurations on each multihomed VTEP in an Ethernet segment are the same, including:" followed by "VLAN IDs," "VNIs," and "Tenant VLAN members that are connected to the Ethernet segment." SFM for SONiC User Guide 1.4.1, "Configure EVPN Multihoming" (cited above). Two per-packet decisions Dell's switch makes require values read from the received copy: filtering by the source of the copy requires the outer source address of each received VXLAN packet to be read, and delivery to the correct segment requires the VXLAN network identifier, which Dell requires to be mapped identically to the tenant VLAN and its segment members on every multihomed switch, to be read. Each is an attribute extracted from the data packet. The claim does not limit the attribute; dependent claim 22 names the VLAN identifier and dependent claim 23 a quality of service attribute. On information and belief, this element is met because each multihomed S5248F-ON reads, from every copy of a flooded packet it receives over the fabric, the VXLAN network identifier and the tenant VLAN, which Dell requires to be mapped identically on every switch of the segment and which determine the segments to which the packet is to be flooded, and the outer source address of the copy, on which, on information and belief, the split-horizon filter documented for the routing suite Dell ships operates. To the extent this element is found not to be literally present, reading the VXLAN network identifier and VLAN of a received flooded frame to determine the Ethernet segments onto which the frame would be flooded performs the function of extracting an attribute from the data packet, in the same way (parsing a header field of each received copy), with the same result (a value from which the forwarding node is determined).

103. **"to apply a predefined mapping function to the extracted attribute so as to select a single interconnect node for forwarding the data packet to the second ring**

**network."** Dell states: "The switch with the highest DF preference value is the designated forwarder for that ESI." SFM for SONiC User Guide 1.4.1, "Configure EVPN Multihoming" (cited above) (the DF preference ranges from 1 to 65,535 with a default of 32,767). The code base Dell states it ships describes the election rule and its inputs: "Peer VTEP wins DF election if - the peer-VTEP has higher preference (or) the pref is the same but peer's IP address is lower," and "Only VTEPs that have advertised the ESR can participate in DF election." FRRouting source file zebra/zebra_evpn_mh.c, release 8.2.2, function zebra_evpn_es_run_df_election (cited above). Dell's own open source disclosure names the routing suite it ships, "PACKAGE NAME: frr" at "PACKAGE VERSION: 8.2.2-sonic-0," and the multihoming source file "bgpd/bgp_evpn_mh.c." Dell open source license manifest, Dell_Networking/SONiC 4.4.0 (cited above). The documentation of that routing suite states that the result of the election is applied in the data plane to flooded traffic: "BUM traffic is rxed via the overlay by all PEs attached to a server but only the DF can forward the de-capsulated traffic to the access port. To accommodate that non-DF filters are installed in the dataplane to drop the traffic." FRRouting User Guide, release 8.2.2, "BGP," "Ethernet Virtual Network - EVPN," "EVPN Multihoming," "BUM handling" (cited above). The specification of the '673 Patent states that any mapping function may be used provided that it uniquely determines a single interconnect node for a given packet, is symmetric as between the two ends of a conversation, and maps the packets of a given conversation to the same node, and that "the function may produce an index of the single interconnect node that is to forward the packet." '673 Patent at col. 6, l. 32 – col. 7, l. 4. A predefined mapping function is any predetermined rule by which the value extracted from the packet yields the single node that is to forward it; the claim does not require that the rule be a hash or a modulo computation, and dependent claim 24 separately recites a hashing function. In

the Accused Instrumentalities the value extracted from the packet, its VXLAN network identifier and tenant VLAN, identifies the Ethernet segment or segments to which the packet is to be flooded, and for each such segment a single forwarder has been predetermined among the attached switches by a common, deterministic rule, the highest configured preference with the numerically lowest address as the tiebreaker, and installed in the data plane as a per-port filter, which is in place before the packet arrives. Applied to the packet, that predetermined rule yields exactly one node for the packet's segment, yields the same node for both directions of a conversation, and yields the same node for every packet of a conversation, which are the three conditions the '673 Patent states a mapping function is typically defined to meet.

104. On information and belief, this element is met because the VXLAN network identifier and VLAN extracted from the packet identify the Ethernet segment or segments to which it is to be flooded, and for each such segment a single forwarder has been predetermined among the attached switches by a rule common to all of them, the highest configured preference with the numerically lowest address as the tiebreaker, and installed in the data plane as a per-port filter in advance of the packet; applied to the packet, that predetermined rule yields exactly one node for the packet's segment, the same node for both directions of a conversation, and the same node for every packet of a conversation, which are the three conditions the '673 Patent states a predefined mapping function is typically defined to meet, and the claim does not require that the rule be a hash or a modulo computation. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents. The accused element is the combination of (i) the mapping of a frame's VLAN or VXLAN network identifier to the Ethernet segment or segments that carry it and (ii) the predefined designated-forwarder election result for each segment. Its function is to select exactly one of the redundant nodes to forward a given flooded

frame, so that a frame is delivered to the segment once and duplication is prevented. Its way is a predefined, deterministic rule, agreed in advance among the nodes, applied to values carried in the frame and to per-switch values: each attached switch is assigned a preference value, which the administrator enters and which defaults to 32,767, and the switches apply a common rule to those values so that every switch independently reaches the same answer as to which of them forwards. Its result is one forwarder per segment, with the remaining attached switches blocked for that traffic, which is the identical outcome the claim produces. The difference between selecting by a computed remainder and selecting by an assigned ranking is insubstantial to a person of ordinary skill in the art, because both are deterministic tie-breaking rules applied to per-switch values to yield a single forwarder, and neither changes what is delivered to the segment. The specification itself offers, as an example of how node indices may be assigned, the ordering of the nodes by their addresses, which is the tiebreaker Dell's election uses. '673 Patent at col. 7, ll. 5–11.

105. **"and if the interconnect node has a 'forward mine' forwarding status, to forward a single copy of the data packet to the second ring network only if the interconnect node is the selected interconnect node, while refraining from forwarding a copy of the data packet if the interconnect node is not the selected interconnect node."** RFC 7432, which Dell states it supports, describes the rule expressly: "The PE that is elected as a DF for a given <ES, VLAN> or <ES, VLAN bundle> will unblock multi-destination traffic for that VLAN or VLAN bundle on the corresponding ES. Note that the DF PE unblocks multi-destination traffic in the egress direction towards the segment. All non-DF PEs continue to drop multi-destination traffic in the egress direction towards that <ES, VLAN> or <ES, VLAN bundle>." RFC 7432, "BGP MPLS-Based Ethernet VPN," sec. 8.5, "Designated Forwarder Election" (cited above). The

documentation of the routing suite Dell ships states the same rule: "BUM traffic is rxed via the overlay by all PEs attached to a server but only the DF can forward the de-capsulated traffic to the access port. To accommodate that non-DF filters are installed in the dataplane to drop the traffic." FRRouting User Guide, release 8.2.2, "BGP," "Ethernet Virtual Network - EVPN," "EVPN Multihoming," "BUM handling" (cited above). In normal operation each multihomed Dell switch forwards a flooded packet onto a segment only if it is the forwarder predetermined for that segment, and drops the packet otherwise, which is the rule this element recites. A switch attached to more than one segment, which Dell supports, forwards onto the segments for which it has been selected and refrains for the others. On information and belief, this element is met because in normal operation each multihomed S5248F-ON forwards a flooded packet onto a segment only if it is the forwarder predetermined for that segment and drops the packet otherwise, as RFC 7432 requires and as the documentation of the routing suite Dell ships describes, drop filters being installed in the data plane of every non-designated switch. To the extent this element is found not to be literally present, a Dell VTEP that is designated forwarder for some segments and not for others forwards a flooded frame onto a segment only when it is the elected node for that segment and refrains otherwise, which is the function (forward only one's own share), the way (testing the election result for the frame's segment), and the result (a single copy delivered) of the claimed "forward mine" rule.

106. **"if the interconnect node has a 'forward none' forwarding status, then refraining from forwarding a copy of the data packet regardless of the predefined mapping function and the selected interconnect node."** During the Startup Delay the switch forwards nothing on the segment whatever the election result, which is a "forward none" condition that overrides the selection. Of the Startup Delay setting Dell states: "The system waits for the

configured amount of time before enabling data plane forwarding." SFM for SONiC User Guide 1.4.1, "Configure EVPN Multihoming" (cited above) (default 300 seconds). To the extent this element is found not to be literally present, the Dell VTEP's suppression of forwarding onto the Ethernet segment during the Startup Delay, and while the node's link is down, performs the function of keeping a node that must not forward from sending any copy of the packet, by withholding forwarding onto the segment without regard to how the forwarder would otherwise be chosen for that packet, with the result that no copy of the packet reaches the segment from that node; whether the condition is called a "forward none" status or a startup state is an insubstantial difference, because the node's behavior toward the packet is the same.

107. **"and if the interconnect node has a 'forward all' forwarding status, then forwarding a singled *[sic]* copy of the data packet to the second ring network regardless of the predefined mapping function and the selected interconnect node."** When the peer withdraws, the surviving switch becomes the forwarder for everything on the segment regardless of any per-VLAN assignment, which corresponds to "forward all." "In the case of link or port failure, the affected PE withdraws its Ethernet Segment route." RFC 7432, "BGP MPLS-Based Ethernet VPN," sec. 8.5, "Designated Forwarder Election" (cited above). Dell states support for RFC 7432. SFM for SONiC User Guide 1.4.1, "EVPN Multihoming" (cited above). A node that has withdrawn its Ethernet Segment route no longer takes part in the election: "Only VTEPs that have advertised the ESR can participate in DF election." FRRouting source file zebra/zebra_evpn_mh.c, release 8.2.2, function zebra_evpn_es_run_df_election (cited above). To the extent this element is found not to be literally present, the surviving Dell VTEP's behavior after its peer withdraws its Ethernet Segment route performs the function of keeping service to the segment when the other node cannot forward, by forwarding every packet for the

segment without regard to the assignment that applied before the failure, with the result that a single copy of each packet is still delivered; whether that condition is called a "forward all" status or the outcome of a new election in which it is the only remaining node is an insubstantial difference.

108. To the extent any element of the asserted claims of the '673 Patent is found not to be literally present in the Accused Instrumentalities, that element is present under the doctrine of equivalents, because the corresponding element of the Accused Instrumentalities performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed element, and differs from the claimed element, if at all, only insubstantially from the perspective of a person of ordinary skill in the art.

109. Defendants, under 35 U.S.C. § 271(b), have induced and continue to induce third parties, including Dell's enterprise, service provider, cloud, and governmental customers, their information technology personnel, and Dell's resellers, channel partners, and systems integrators, in this District and throughout the United States, to directly infringe at least claims 1, 18, 20, 22, and 35 of the '673 Patent by deploying, configuring, and using the Enterprise SONiC EVPN Multihoming Products in the manner described above. Dell's inducement has been knowing and intentional at least since the filing and service of this Complaint. Dell has taken, and continues to take, active steps to encourage the infringing use, including by publishing and distributing the Dell SmartFabric Manager for SONiC User Guide topics "EVPN Multihoming" and "Configure EVPN Multihoming" quoted above, which instruct customers to configure two to four VTEPs as an Ethernet segment attached by an LACP port channel, to set the designated forwarder preference, the Startup Delay, and the Neighbor HoldTime, and to configure identical VLAN, VNI, and tenant VLAN mappings on every multihomed switch; by providing the SmartFabric

Manager for SONiC software that performs that configuration on customers' switches; by publishing the Dell Enterprise SONiC Distribution documentation, compatibility matrix, release notes, and knowledge base articles for EVPN multihoming, including Dell KB article 000379160 quoted above; and by providing deployment services and technical support through which Dell personnel configure, troubleshoot, and support EVPN multihoming for customers. Dell knows that customers who follow those instructions make and use the apparatus of claim 18 and the network of claim 35 and perform the method of claim 1, and Dell specifically intends that they do so, because Dell's EVPN multihoming feature has no purpose other than to attach a Layer 2 segment to the fabric through two or more switches in that manner. Dell's customers directly infringe the '673 Patent when they use the Enterprise SONiC EVPN Multihoming Products as Dell intends and instructs.

110. Defendants, under 35 U.S.C. § 271(c), have contributorily infringed and continue to contributorily infringe at least claims 1, 18, 20, 22, and 35 of the '673 Patent by selling, offering to sell, and importing into the United States the Enterprise SONiC EVPN Multihoming Products, including the Dell Enterprise SONiC Distribution software and the SmartFabric Manager for SONiC software, with knowledge that those products constitute a material part of the claimed invention and are especially made and especially adapted for use in an infringing manner. The EVPN multihoming feature, which implements the Ethernet Segment advertisement and withdrawal, the designated forwarder election, the per-port data plane filters, and the Startup Delay described above, is a material part of the invention claimed in the '673 Patent, is especially made and especially adapted for the infringing use described above, in which two or more switches attach a Layer 2 segment to a fabric while preventing duplicate delivery of flooded frames, and is not a staple article or commodity of commerce suitable for substantial

non-infringing use. Dell has known since at least the filing and service of this Complaint that the feature is so made and adapted. Dell's customers directly infringe the '673 Patent when they use that feature.

111. Defendants have had knowledge of the '673 Patent and of the infringement alleged in this Complaint since no later than the filing and service of this Complaint. Dell's continued infringement, and its continued inducement of and contribution to infringement, after receiving notice of the '673 Patent and of the allegations of this Complaint is knowing and intentional.

112. Defendants' infringement of the '673 Patent since the filing and service of this Complaint has been and continues to be willful. With knowledge of the '673 Patent and of the allegations of this Complaint, Dell has continued to make, use, sell, offer for sale, and import the Enterprise SONiC EVPN Multihoming Products, and to instruct its customers to use them in the infringing manner, in reckless disregard of Plaintiff's rights and without any good-faith belief that it does not infringe or that the '673 Patent is invalid. Plaintiff seeks enhanced damages under 35 U.S.C. § 284 for Defendants' willful infringement after the filing of this Complaint.

113. Defendants' acts of direct, induced, and contributory infringement of the '673 Patent have occurred and continue to occur in the United States, including in this District, and have injured and continue to injure and damage Plaintiff. Plaintiff has suffered and continues to suffer damages as a result of Defendants' infringement of the '673 Patent. Defendants are liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendants' infringement, but in no event less than a reasonable royalty, together with interest and costs. Defendants' continuing infringement of the '673 Patent, which remains in force until January 20, 2029, has caused and will continue to cause Plaintiff irreparable harm

for which there is no adequate remedy at law, and Plaintiff is entitled to injunctive relief under 35 U.S.C. § 283 or, in the alternative, to a compulsory ongoing royalty for the remaining term of the ’673 Patent.

**COUNT IV**

**INFRINGEMENT OF U.S. PATENT NO. 6,952,397**

114. Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

115. Plaintiff asserts at least claims 9, 1, 12, and 15 of the ’397 Patent against at least the OS6 Ethernet Ring Protection Products. Claim 9 is a device claim directed to a communication device for operation as a node in a bidirectional ring network, and is the exemplary claim addressed below. Claim 1 is a network claim directed to the ring network in which such devices operate, and claims 12 and 15 are method claims practiced whenever the OS6 Ethernet Ring Protection Products are operated in a ring as described below. Plaintiff’s identification of claim 9 as the exemplary claim is without prejudice to its assertion of these and other claims of the ’397 Patent in its infringement contentions.

116. The ’397 Patent expired on October 31, 2023. Defendants, under 35 U.S.C. § 271(a), directly, literally, and under the doctrine of equivalents, infringed at least claim 9 of the ’397 Patent during its term, and within the six years preceding the filing of this Complaint, by making, using, testing, selling, offering for sale, and importing into the United States the OS6 Ethernet Ring Protection Products. Claim 9 is directed to a communication device, which is a single device that Dell made and sold: the Dell PowerSwitch N3224T-ON, and the other N-Series switches, running Dell Networking OS6 with Ethernet Ring Protection. The ring network is the environment “for operation as a node in” which the claimed device is made, sold, and

configured, and the N3224T-ON was made, sold, and documented for that use. Dell itself used the OS6 Ethernet Ring Protection Products in the claimed manner, on information and belief, in the development, testing, validation, and demonstration ring networks in which Dell exercised the Ethernet Ring Protection feature.

117. Claim 9 of the ’397 Patent recites:

> A communication device, for operation as a node in a ring network over which traffic is transmitted in both clockwise and counterclockwise directions, the device comprising: a traffic processing block, adapted to prepare outgoing data packets for transmission over the network and to process incoming data packets received from the network; and a media access control block, interfacing to the traffic processing block and adapted to be coupled to the network so as to transmit the outgoing data packets over the network in both of the clockwise and counterclockwise directions, while passing to the traffic processing block the incoming data packets that it receives in only one of the clockwise and counterclockwise directions wherein the media access control block is adapted to maintain information indicating in which of the directions other nodes in the network are configured to receive the traffic, and to select the directions in which to transmit the outgoing data packets to the other nodes responsive to the information, and wherein the media access control block is adapted to send topology discovery packets around the ring to the other nodes in both the clockwise and the counterclockwise directions, and to extract the information from the packets after the packets have made a complete circuit of the ring.

118. The OS6 Ethernet Ring Protection Products, as exemplified by the Dell PowerSwitch N3224T-ON running Dell Networking OS6 with Ethernet Ring Protection, practiced every element of claim 9, as set forth in the following paragraphs.

119. **“A communication device, for operation as a node in a ring network over which traffic is transmitted in both clockwise and counterclockwise directions, the device comprising:”** The N3224T-ON operates as a node on an Ethernet ring, attached by two ring ports. Dell states: “Each node in the ring connects to the ring via two ports, known as ring links,” and “At any time, traffic may flow through all but one of the ring links which ensures a loop free ring.” N-Series User’s Configuration Guide 6.7.0, ch. 26, “Ethernet Ring Protection,” p. 1043

(cited above). Traffic flows in both directions around the ring links that are not blocked. To the extent this element is found not to be literally present, the N3224T-ON operating as a node of an ITU-T G.8032 Ethernet ring, a physically closed loop of full-duplex links to which each node attaches by two ring ports, performs the function of taking part as a node in a ring over which traffic travels both ways, by way of two ring ports each facing one direction around the ring, with the result that the node sends and receives ring traffic in both directions; that G.8032 holds one link blocked for data traffic to prevent loops is an insubstantial difference for the preamble, which recites the ring over which the device operates and not how loops on that ring are avoided.

120. **"a traffic processing block, adapted to prepare outgoing data packets for transmission over the network and to process incoming data packets received from the network."** The traffic processing block of the N3224T-ON is its packet-switching hardware together with the OS6 forwarding software. Dell states: "Line-rate Layer 2 switching: All (non-blocking)"; "MAC addresses: 32K"; and "N3224T-ON IO/PS Airflow, with OS6: 24x RJ45 10/100/1000Mb auto-sensing ports, 4x 10G SFP+." Dell PowerSwitch N3200-ON Series Switches Specification Sheet ("N3200-ON Specification Sheet"), https://www.delltechnologies.com/asset/en-us/products/networking/technical-support/dell-networking-n3200-powerswitch-specsheet.pdf (accessed Sept. 19, 2026). Of a ring port in the forwarding state Dell states: "Forwarding (unblocked): forwards data traffic and transmits and receives R-APS PDUs." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1046 (cited above). The traffic processing block prepares outgoing frames for transmission on the switch's ports, including its two ring ports, and processes incoming frames received from the ring.

121. **"and a media access control block, interfacing to the traffic processing block and adapted to be coupled to the network so as to transmit the outgoing data packets over the network in both of the clockwise and counterclockwise directions."** A node whose two ring ports are both in the Forwarding state transmits data out of both ring ports, that is, in both directions around the ring: "Forwarding (unblocked): forwards data traffic and transmits and receives R-APS PDUs." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1046 (cited above). The media access control functions of the ring ports, which transmit and receive frames on the ring links and interface to the switching function, are the claimed media access control block. To the extent the device must also be the node that receives from one direction, the node still sends the R-APS protocol data units it generates out of both ring ports, as Dell states, which performs the function of transmitting toward the other nodes in both directions in the same way.

122. **"while passing to the traffic processing block the incoming data packets that it receives in only one of the clockwise and counterclockwise directions."** The node holding the ring protection link receives data from a single direction for the VLANs of that instance and, where it runs a second instance, transmits data out of both ring ports. Of a ring port in the discarding state Dell states: "Discarding (blocked): only transmits and receives R-APS PDUs." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1046 (cited above). "Under normal conditions, the RPL is blocked (not used for data traffic)." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1043 (cited above). Recommendation ITU-T G.8032/Y.1344 (08/2015), "Ethernet ring protection switching" ("G.8032"), on which Dell states its feature is based, describes the block as applying to one ring port and to the VLANs of one protection instance: "This results in blocking the transmission and

reception of traffic on one ring port. Each ERP instance shall only block or unblock the VIDs of the traffic channels of the set of VLANs assigned for protection by that ERP instance." G.8032, clause 9.4, https://www.itu.int/rec/T-REC-G.8032-201508-S/en (accessed Sept. 21, 2026). Dell states that "The Ethernet Ring Protection feature is based on the ITU-T G.8032 (08/15), Corrigendum 1 (08/17) standard." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1043 (cited above). Dell's own sample output shows one node configured with two ring protection instances at once, each with its own ring protection link role and its own set of VLANs, the first as ring protection link owner on port0 and the second with no ring protection link: "Instance" 1 with "RPL" "port0 RPL Owner" and "Inclusion-list VLAN IDs" "1000-1299," and "Instance" 2 with "RPL" "None" and "Inclusion-list VLAN IDs" "1500-1799." Dell EMC Networking N-Series Switches CLI Reference Guide, Version 6.7, Rev. A09, April 2021 ("N-Series CLI Reference Guide 6.7"), "Ethernet Ring Protection Commands," "show ethernet ring g8032 configuration," Example, pp. 491 to 492, https://dl.dell.com/manuals/all-products/esuprt_networking_int/esuprt_networking_switches_series/esuprt_networking_switches_powerswitch/networking-n3200-series_User%27s-Guide16_en-us.pdf (accessed Sept. 21, 2026). Where a node runs more than one protection instance, as Dell's own sample output shows, the node transmits data out of both ring ports for the VLANs of the instance that is not blocked while, for the VLANs of the instance for which it holds the ring protection link, it receives data from one direction only.

123. On information and belief, this element is met because the ring port of the N3224T-ON that holds the ring protection link is blocked, for the VLANs of its protection instance, for the transmission and reception of data traffic, as G.8032 prescribes, so that for those

VLANs the node passes to its forwarding function only the data it receives on its other ring port, that is, from one direction; and where the node runs a second protection instance, as Dell's own sample output shows it may, it transmits data out of both ring ports for the VLANs of that instance while receiving the protected VLANs from one direction only. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents. The ring-protection-link owner's port handling performs the function of ensuring that the node accepts ring traffic from one direction only, so that frames are not received twice and no loop forms; its way is that the media access control layer passes up data frames arriving on one ring port and discards those arriving on the other, which Dell describes as the Discarding port state; and its result is that the traffic processing function receives data from a single direction at any given time, the direction changing when the ring state changes. That the same port also suppresses outgoing data frames, and that the block is applied per set of VLANs rather than to all traffic of the node, are insubstantial differences, because the claimed benefit, single-direction receipt at the node, is obtained in the same way.

124. **"wherein the media access control block is adapted to maintain information indicating in which of the directions other nodes in the network are configured to receive the traffic."** The ring protection link owner's periodic messages "indicate which of its ring ports is being blocked." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1045 (cited above). That is information about the direction from which the owner does not receive data. Dell documents a stored field, maintained separately for each of the node's two ring ports, whose contents identify another node on the ring and the port that node has blocked: a field named "Remote R-APS," defined as "The node ID and Blocked port reference pair that is last received on the ring port." N-Series CLI Reference Guide 6.7, "show ethernet

ring g8032 status," p. 494 (cited above). Dell's own sample output for that command prints a separate entry against each of the node's two ring ports, naming a different remote node against each: against the first ring port, identified as Port0 and 0/1, "NodeId 00:90:56:26:45:12, BPR: 0," and against the second, identified as Port1 and 0/2, "NodeId 00:0a:f7:94:e4:0a, BPR: 0." N-Series CLI Reference Guide 6.7, "show ethernet ring g8032 status," Example, p. 495 (cited above). G.8032 prescribes the same stored pair: "The flush logic retains for each ring port the information of node ID and blocked port reference (BPR) of the last R-APS message received over that ring port," and defines the reference: "BPR = 0 corresponds to ring link 0 blocked." "BPR = 1 corresponds to ring link 1 blocked." G.8032, clause 10.1.10, and clause 10.3. Dell thus documents that each node keeps, in a field held separately for each of its two ring ports, information indicating which port of another node is blocked, that is, the direction from which that node does not receive traffic.

125. **"and to select the directions in which to transmit the outgoing data packets to the other nodes responsive to the information."** G.8032 ties the stored information to a change in forwarding: "For each new R-APS message received over one ring port, the flush logic extracts the (node ID, BPR) pair and compares it with the previous (node ID, BPR) pair stored for that ring port. If it is different from the previous pair stored, then the previous pair is deleted and the newly received (node ID, BPR) pair is stored for that ring port. If it is different from the (node ID, BPR) pair already stored at the other ring port, then a flush FDB action is triggered, except when the new R-APS message has DNF or the receiving Ethernet ring node's ID." G.8032, clause 10.1.10. Dell documents the consequence: "This message will go around the major ring causing all the other ERP instances in the major ring to perform an FDB flush. After that, MAC re-learning will occur and traffic along the protected data VLANs can flow properly."

N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," "Topology Change Notification," p. 1049 (cited above). When the stored node identifier and blocked port reference change, the node discards its forwarding entries and relearns them, so that frames for each destination are thereafter transmitted out of the ring port, and hence in the direction, from which that destination is now reached. On information and belief, this element is met because when the node identifier and blocked port reference that the N3224T-ON maintains for a ring port change, the node flushes its forwarding database and relearns it, as G.8032 prescribes and as Dell describes for its own product, so that the direction in which the node transmits to each other node is selected responsively to the information it maintains about which port of another node is blocked. To the extent this element is found not to be literally present, flushing the forwarding table when the maintained information changes and relearning the direction of each destination performs the function of selecting the transmit direction toward each node responsively to the receive-direction information, in substantially the same way (a per-destination direction held at the node and revised when the maintained information changes), with the same result (frames are sent in the direction in which the destination receives them); deriving the new direction by relearning rather than by reading it from a table is an insubstantial difference.

126. **"and wherein the media access control block is adapted to send topology discovery packets around the ring to the other nodes in both the clockwise and the counterclockwise directions."** An OS6 node originates ring control messages out of both ring ports, that is, in both directions. Dell states: "The node that actually generates the R-APS messages will always send messages over both of its ring ports regardless of whether or not the R-APS channels are blocked on its ring ports." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1046 (cited above). Of the ring protection link owner: "It

periodically sends these, every five seconds, over both of its ring ports. These messages indicate which of its ring ports is being blocked." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1045 (cited above). The R-APS messages report ring state and the blocked port, which is information about the topology of the ring. To the extent this element is found not to be literally present, the R-APS messages sent out of both ring ports perform the function of distributing ring topology state to every node, by way of control packets sent around the ring in both directions, with the result that all nodes learn the current ring topology; labeling the packets protection messages instead of topology discovery packets is an insubstantial difference where, as here, they carry the topological fact of which port of which node is blocked.

127. **"and to extract the information from the packets after the packets have made a complete circuit of the ring."** Dell's own description shows a node's ring control message returning to that node after traveling the ring. Dell states: "Nodes receiving the R-APS message must send a copy to the ERP control process for local processing and also forward the received R-APS to the next node if the next hop port is not blocked. When a node receives its own generated R-APS message, it drops the R-APS message." And, later in the same section: "Similarly, R-APS messages will be received and processed regardless of whether or not the R-APS channel is being blocked on its ring ports." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," "R-APS Channel," pp. 1045 to 1046 (cited above). Dell documents that ring control messages travel around the ring and that stale ones may still be in transit when a link recovers: the guard timer "is used when a link is recovered, yet at the same time older messages are still propagating around the ring with failure indications," and Dell describes the timer as "the amount of time that an ERP control process discards R-APS messages before being allowed to process them." N-Series User's Configuration Guide 6.7.0, ch. 26,

"Ethernet Ring Protection," "Guard Timer," p. 1047 (cited above). G.8032 extracts the information from every received message, including one carrying the receiving node's own identifier, and only then decides whether to act on it: "For each new R-APS message received over one ring port, the flush logic extracts the (node ID, BPR) pair and compares it with the previous (node ID, BPR) pair stored for that ring port," followed by the exception "except when the new R-APS message has DNF or the receiving Ethernet ring node's ID." G.8032, clause 10.1.10. The same standard states that channel blocking "only prevents R-APS messages received at one ring port from being forwarded to the other ring port" and "allows R-APS messages received at each ring port to be delivered to the ERP control process." G.8032, clause 9.5. Dell states that the receiving node delivers every received message to its control process for processing, and separately states what happens to a message that has returned to the node that generated it, namely that it is not forwarded onward. A rule for the node's own returned message exists because such messages return. Under G.8032, the control process extracts the node identifier and blocked port reference from every received message, including one carrying the receiving node's own identifier, before deciding not to act on it.

128. On information and belief, this element is met because Dell states that every ring control message a node receives is delivered to its control process for local processing, and separately states what the node does with a control message of its own that has returned to it after traveling the ring, namely that it does not forward it onward, a rule that exists because such messages do return; G.8032 extracts the node identifier and blocked port reference from every received message, including one carrying the receiving node's own identifier, before deciding not to act on it; and Dell's own guard timer exists because, in Dell's words, older messages are "still propagating around the ring"; the N3224T-ON therefore extracts the information carried by

its own ring control messages after they have traveled the ring, and then discards them rather than forwarding them. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents. The R-APS messages that a node sends out of both of its ring ports traverse the ring in both directions and return to the node that sent them, and every received R-APS message, including a node's own returned message, is delivered to the node's control process, which extracts the node identifier and blocked port reference it carries before determining what to do with it. That performs the function of obtaining, from control packets that have made a complete circuit of the ring in both directions, the information indicating the direction from which each other node receives traffic, in the same way (extraction of the information by the control process from the returned packets), with the same result (the node holds the information the returned packets carry). To the extent the N3224T-ON, having extracted the information from its own returned message, then discards that message rather than storing it, that is an insubstantial difference in what the node does with the information after extracting it, not in whether the information is extracted from packets that have made a complete circuit of the ring.

129. To the extent any element of the asserted claims of the '397 Patent is found not to be literally present in the Accused Instrumentalities, that element is present under the doctrine of equivalents, because the corresponding element of the Accused Instrumentalities performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed element, and differs from the claimed element, if at all, only insubstantially from the perspective of a person of ordinary skill in the art.

130. Defendants' acts of direct infringement of the '397 Patent occurred in the United States, including in this District, during the term of the '397 Patent, and injured and damaged

Plaintiff. Plaintiff has suffered damages as a result of Defendants' infringement of the '397 Patent during its term. Defendants are liable to Plaintiff under 35 U.S.C. § 284 for past damages in an amount that adequately compensates Plaintiff for Defendants' infringement of the '397 Patent from a date no earlier than six years before the filing of this Complaint through October 31, 2023, but in no event less than a reasonable royalty, together with interest and costs. Because the '397 Patent has expired, Plaintiff does not seek injunctive relief with respect to it.

**COUNT V**

**INFRINGEMENT OF U.S. PATENT NO. 8,009,684**

131. Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

132. Plaintiff asserts at least claims 14, 1, 16, and 18 of the '684 Patent against at least the OS6 Ethernet Ring Protection Products deployed in the multi-ring and sub-ring topologies that Dell documents. Claim 14 is a network claim directed to a communication network of at least two rings in an asymmetric layout with exactly one anchor ring, and is the exemplary claim addressed below. Claim 1 is the method counterpart, practiced whenever such a network is operated as described below; claim 16 additionally recites adaptively maintaining associations between MAC addresses and egress nodes, which is the standard Layer 2 learning that Dell's ring nodes perform; and claim 18 additionally recites choosing a default ringlet and switching to the other ringlet on detecting a failure, which is the ring protection link that Dell documents as blocked in normal operation and unblocked on failure. Plaintiff's identification of claim 14 as the exemplary claim is without prejudice to its assertion of these and other claims of the '684 Patent in its infringement contentions.

133. The ’684 Patent expired on March 2, 2026. Defendants, under 35 U.S.C. § 271(a), directly, literally, and under the doctrine of equivalents, infringed at least claim 14 of the ’684 Patent during its term, and within the six years preceding the filing of this Complaint, by making and using communication networks built of the OS6 Ethernet Ring Protection Products in the multi-ring and sub-ring topologies described below. On information and belief, Dell itself built and used such networks in the development, testing, validation, demonstration, and support of the multi-ring Ethernet Ring Protection feature, including in the validation networks in which Dell exercised the “Multi-ring (sub-ring without R-APS virtual channel)” topology that its documentation names. Dell also made, sold, offered for sale, and imported the OS6 Ethernet Ring Protection Products, which are the ring nodes of the claimed network.

134. Claim 14 of the ’684 Patent recites (the repeated clause “wherein at least two ring nodes of the plurality of ring nodes are each connected to at least two of the communication rings” appears twice in the claim as printed in the issued patent):

> A communication network, comprising: at least two communication rings in an asymmetric layout, exactly one of which communication rings is an anchor ring, each communication ring comprising two unidirectional ringlets oriented in mutually-opposite directions; and a plurality of ring nodes connected by the communication rings, wherein the asymmetric layout is such that not all the nodes of the plurality of ring nodes are connected to all the communication rings, wherein the anchor ring is the only communication ring of the communication network connected to all the nodes of the plurality of ring nodes, wherein at least two ring nodes of the plurality of ring nodes are each connected to at least two of the communication rings, wherein at least two ring nodes of the plurality of ring nodes are each connected to at least two of the communication rings *[sic]*, and wherein each individual ring node of the plurality of ring nodes is arranged to: accept a data packet comprising one or more header fields, determine an egress ring node to which the data packet is to be forwarded, identify a subset of the communication rings comprising one or more common communication rings that are connected to both the individual ring node and the egress ring node, select, responsively to a respective value of at least one of the header fields of the packet, a ringlet of a communication ring among the one or more common communication

rings, and forward the data packet to the egress ring node over the selected ringlet.

135. Networks built of the OS6 Ethernet Ring Protection Products, as exemplified by Dell PowerSwitch N3224T-ON switches running Dell Networking OS6 with Ethernet Ring Protection in a multi-ring topology, practiced every element of claim 14, as set forth in the following paragraphs.

136. **"A communication network, comprising: at least two communication rings in an asymmetric layout, exactly one of which communication rings is an anchor ring."** Dell lists the supported topologies as "Single ring," "Shared ring node: A single node would participate in two physical rings and bridge between them," and "Multi-ring (sub-ring without R-APS virtual channel)." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1044 (cited above). G.8032 describes the interconnection layouts it supports, including one in which two nodes of a ring are joined by a single further ring link and a ladder of conjoined rings: "Ethernet rings may be interconnected through an interconnection point (as depicted in Figure II.1), or through dual interconnection nodes with a ring link (as depicted in Figure II.2) or a multi-ring/ladder network that consists of conjoined Ethernet rings (as depicted in Figure II.3)." G.8032, Appendix II, objective II.16. "The ERP switching model for interconnection supports multi-ring/ladder topologies such as those illustrated in Appendix II." G.8032, clause 9.7. Dell states that "The Ethernet Ring Protection feature is based on the ITU-T G.8032 (08/15), Corrigendum 1 (08/17) standard." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1043 (cited above). Dell documents the multi-ring topology its product supports, in which a sub-ring attaches to a major ring at interconnection nodes, and G.8032 describes the same layouts, including a sub-ring consisting of a single ring link between two nodes of the major ring and a ladder of conjoined rings. A sub-ring attached to

a major ring is a two-ring layout in which the rings do not share all nodes, which is asymmetric in the claim's sense. On information and belief, this element is met because networks built with the N3224T-ON in the multi-ring topology Dell documents, in which a sub-ring attaches to a major ring at interconnection nodes, and in particular in the configuration G.8032 depicts, in which a sub-ring consists of a single ring link between two nodes of the major ring or a ladder of such sub-rings, are networks of at least two rings in an asymmetric layout in which the major ring is the only ring reaching every node, that is, the anchor ring; Dell instructs that configuration and, on information and belief, built and operated such networks in its own validation.

137. **"each communication ring comprising two unidirectional ringlets oriented in mutually-opposite directions."** A G.8032 ring is a closed loop of full-duplex Ethernet links with one link held blocked. Dell states: "At any time, traffic may flow through all but one of the ring links which ensures a loop free ring," and "Under normal conditions, the RPL is blocked (not used for data traffic)." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1043 (cited above). Dell names the accused model and states its physical layer: "The N3224P-ON and N3224T-ON front panels support 24x1G 1000BASE-T ports plus 4x10G SFP+ ports. The 1G ports support 10/100/1000BASE-T full duplex operation and support half duplex operation at 10M/100M speeds." N-Series User's Configuration Guide 6.7.0, "Hardware Overview," "N3200-ON Series Switch Ports," p. 184 (cited above). Dell describes messages sent in both directions around the ring: on detecting a failure a node "will generate an R-APS Signal Fail (SF) message along both the directions." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1044 (cited above). G.8032 states, among the network objectives in its Appendix II, which G.8032 notes does not form an integral part of it, that each ring node is joined to two other ring nodes by IEEE 802.3 links: "In Ethernet ring topology, each Ethernet

ring node shall be connected to two other Ethernet ring nodes utilizing ring ports based on [b-IEEE 802.3] MAC." G.8032, Appendix II, objective II.6. The claim itself describes a ringlet as one of two unidirectional paths around a ring, the two being oriented in mutually opposite directions, and the '684 Patent describes each ring as comprising "two unidirectional ringlets oriented in mutually-opposite directions," a clockwise ringlet and a counterclockwise ringlet, each of which "comprises ring segments" that "carry the traffic from one node 24 to another." '684 Patent at col. 5, ll. 15–20. A Dell Ethernet Ring Protection ring is a closed loop of full-duplex Ethernet links, each carrying data in both directions at once, so the ring comprises two sets of unidirectional links oriented in mutually opposite directions, which are the two ringlets this element recites. On information and belief, this element is met because each Dell Ethernet Ring Protection ring is a closed loop of full-duplex Ethernet links, and Dell names the accused model's ports as full duplex, so that the links carrying data in one direction and the links carrying data in the other are two sets of unidirectional links oriented in mutually opposite directions, which are the two ringlets the claim recites; that one link is held blocked for data in normal operation is the ring's loop-prevention state, and Dell states that the blocked port continues to transmit and receive protection messages. To the extent this element is found not to be literally present, each G.8032 ring provides two transmission paths in mutually opposite directions, and the function, way, and result correspond to the claimed pair of unidirectional ringlets: either direction around the ring can carry a frame to another ring node, one being used in normal operation and the other after a failure, and holding the ring protection link blocked in normal operation is an insubstantial difference for this structural element.

138. **"and a plurality of ring nodes connected by the communication rings."** In a Dell OS6 Ethernet Ring Protection deployment, each N3224T-ON (or other OS6 switch) is a

ring node that connects to a ring through two ring ports, and every ring has at least two such nodes. Dell states: "Each node in the ring connects to the ring via two ports, known as ring links." "Each ring link is bounded by two neighbors (Ethernet ring nodes). The minimum number of ring nodes in a ring is two." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1043 (cited above). "N3224T-ON IO/PS Airflow, with OS6: 24x RJ45 10/100/1000Mb auto-sensing ports, 4x 10G SFP+." Dell PowerSwitch N3200-ON Series Switches Specification Sheet (cited above). A deployment with two or more rings therefore comprises a plurality of ring nodes connected by the communication rings.

139. **"wherein the asymmetric layout is such that not all the nodes of the plurality of ring nodes are connected to all the communication rings."** In Dell's shared-ring-node and sub-ring topologies only the shared or interconnection nodes sit on both rings; the other nodes sit on one. Dell lists the supported topologies as "Single ring," "Shared ring node: A single node would participate in two physical rings and bridge between them," and "Multi-ring (sub-ring without R-APS virtual channel)." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1044 (cited above). The layouts G.8032 describes, a sub-ring attached to the major ring at two interconnection nodes, a single ring link between two nodes of the major ring, and a ladder of conjoined rings, are each layouts in which not all nodes are connected to all rings. On information and belief, this element is met because in the multi-ring topology Dell documents, only the interconnection nodes belong to both the major ring and the sub-ring, and every other node belongs to one ring, so that not all of the ring nodes are connected to all of the rings; the same is true of the single-link sub-ring and the ladder that G.8032 depicts. To the extent this element is found not to be literally present, the layout of Dell's documented sub-ring and shared-ring-node topologies, in which the rings do not all pass through the same nodes,

performs the function of letting some of the nodes be served by an additional ring without extending that ring to every node, in the way that only the shared or interconnection nodes are members of both rings, with the result that not all of the ring nodes are connected to all of the rings, which is the claimed asymmetry.

140. **"wherein the anchor ring is the only communication ring of the communication network connected to all the nodes of the plurality of ring nodes."** Dell documents topologies in which a node participates in two rings: "Shared ring node: A single node would participate in two physical rings and bridge between them." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1044 (cited above). G.8032 describes an interconnection in which two nodes of a ring are joined by a single further ring link, and a ladder of conjoined rings: "Ethernet rings may be interconnected through an interconnection point (as depicted in Figure II.1), or through dual interconnection nodes with a ring link (as depicted in Figure II.2) or a multi-ring/ladder network that consists of conjoined Ethernet rings (as depicted in Figure II.3)." G.8032, Appendix II, objective II.16; "The ERP switching model for interconnection supports multi-ring/ladder topologies such as those illustrated in Appendix II." G.8032, clause 9.7. Dell's own command reference describes a sub-ring node as carrying a single sub-ring port: "In a sub-ring, only one ring port may be configured per node." N-Series CLI Reference Guide 6.7, "Ethernet Ring Protection Commands," "open-ring," p. 478 (cited above). Dell states that "Interconnection of two rings means that two rings might share the same link or share the same node." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," "ERPS Subrings," p. 1048 (cited above). The '684 Patent describes the anchor ring as the one ring that "is common to all ring nodes." '684 Patent at col. 5, ll. 39–42. In a network in which a sub-ring consists of a single ring link between two nodes of

the major ring, or in a ladder of such sub-rings, the major ring is connected to every node of the network and is the only ring so connected; it is the anchor ring, and each sub-ring is connected only to its two interconnection nodes. Dell's description of a sub-ring as a partial ring that attaches to the major ring at interconnection nodes, and Dell's own command reference, which provides for one sub-ring port per node, describe that configuration, and G.8032 depicts it. On information and belief, this element is met because in a network in which a sub-ring consists of a single ring link between two nodes of the major ring, or in a ladder of such sub-rings, the major ring is connected to every node of the network and is the only ring so connected, and each sub-ring is connected only to its two interconnection nodes; Dell's description of a sub-ring as a partial ring attaching to the major ring at interconnection nodes, Dell's statement that two rings may share the same link, and Dell's own command reference, which provides for one sub-ring port per node, describe that configuration, and G.8032 depicts it. To the extent this element is found not to be literally present, it is present under the doctrine of equivalents. In the single-link sub-ring and ladder configurations that G.8032 depicts and that Dell's product supports, the major ring performs the function of the claimed anchor ring (the one ring that connects all of the ring nodes), in the same way (a closed ring of which every ring node is a member and through which every sub-ring is reached), with the same result (a single ring common to every node of the network), and any difference between the major ring of those configurations and the claimed anchor ring is insubstantial.

141. **"wherein at least two ring nodes of the plurality of ring nodes are each connected to at least two of the communication rings."** Under G.8032, a sub-ring attaches to a major ring at two interconnection nodes, and each interconnection node is a member of both the major ring and the sub-ring. Dell describes the multi-ring topology in which a sub-ring joins the

major ring, and uses the plural for the nodes at which it joins: "Here the major ring is fully formed, while the sub-ring connects to the major ring at interconnection nodes." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1049 (cited above). G.8032 defines those nodes as belonging to both rings: "Ethernet ring nodes C and D, which are common to both ERP1 and ERP2, are called the interconnection nodes." G.8032, clause 9.7. In a Dell "Multi-ring (sub-ring without R-APS virtual channel)" network built that way, at least two ring nodes are each connected to at least two of the communication rings. To the extent it is argued that an interconnection node is not connected to a ring because it takes part in that ring through an Ethernet Ring Protection instance configured on its ports rather than through a dedicated ring interface, membership of the ring through a configured instance performs the same function (joining the two rings so that traffic can pass between them while each ring remains protected) in the same way (each interconnection node configured as a member of both rings, with ring ports on each) with the same result (at least two nodes are each connected to at least two rings), and the difference is insubstantial.

142. **"and wherein each individual ring node of the plurality of ring nodes is arranged to: accept a data packet comprising one or more header fields."** Each OS6 ring node accepts Ethernet frames on its ring ports and its other ports and switches them at Layer 2. Dell states: "Each Ethernet Ring Protection (ERP) instance is responsible for protecting one or more VLANs (known as traffic channels) that transport traffic over the physical ring." "The traffic channel should have the ERP ring ports as members." "Forwarding (unblocked): forwards data traffic and transmits and receives R-APS PDUs." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1046 (cited above). "Line-rate Layer 2 switching: All (non-blocking)." Dell PowerSwitch N3200-ON Series Switches Specification Sheet (cited

above). Every such frame comprises header fields, including the destination and source MAC addresses and the IEEE 802.1Q VLAN tag that identifies the traffic channel (protected VLAN) to which the frame belongs.

143. **"determine an egress ring node to which the data packet is to be forwarded."** An Ethernet bridge looks up an egress port from the destination MAC address. On a ring held open at one point, each ring port of a node leads to a determinate sequence of ring nodes, so the association a bridge learns between a destination address and the ring port through which it was reached identifies the ring node through which the destination is reached. The claim does not prescribe how the egress node is determined; dependent claim 16 separately recites determining it from an association of MAC addresses with egress nodes. On information and belief, this element is met because each OS6 ring node learns, for each destination address, the ring port through which the destination was reached, and on a ring held open at the ring protection link each ring port leads to a determinate sequence of ring nodes, so that the learned ring port identifies the ring node through which the destination is reached. To the extent this element is found not to be literally present, each OS6 ring node resolves a frame's destination MAC address, through its learned forwarding table, to the ring port leading to the ring node behind which the destination sits, and identifying that node by the port that reaches it, instead of by a node identifier, is an insubstantial difference: the function (determine where on the ring the frame must go), the way (a learned per-destination association consulted per frame), and the result are the same.

144. **"identify a subset of the communication rings comprising one or more common communication rings that are connected to both the individual ring node and the egress ring node."** Dell documents that each protection instance is configured with the VLANs

it carries and that a VLAN belongs to one instance only: “This command configures the list of VLANs that are protected by the ERP instance. Only VLANs that are participating in both the ring ports of an instance are monitored by the ERP instance. A VLAN may only be configured for one instance.” N-Series CLI Reference Guide 6.7, “Ethernet Ring Protection Commands,” “inclusion-list,” p. 483 (cited above). Dell states that “All the nodes in the ring are required to have the same protected VLANs.” N-Series User’s Configuration Guide 6.7.0, ch. 26, “Ethernet Ring Protection,” “Traffic Channel,” p. 1046 (cited above). The rings connected to both the individual ring node and the egress node are the rings whose configured VLAN lists, held on the node for each ring instance it belongs to, include the VLAN of the frame, because Dell requires the protected VLANs of a ring to be the same at every node of the ring. The claim does not require a topology data structure; dependent claim 17 separately recites one. On information and belief, this element is met because each OS6 ring node holds, for each ring instance it belongs to, the list of protected VLANs that instance carries, Dell requiring all nodes of a ring to have the same protected VLANs and each VLAN to belong to one instance only, so that the rings whose VLAN lists include the VLAN of a frame are the rings connected to both the node and the egress node, and the node identifies them from that configuration. To the extent this element is found not to be literally present, the per-instance protected VLAN configuration held on the ring node performs the function of identifying, for a frame, the rings over which it can be carried to the ring node that serves its destination, by way of a stored association on the node between each ring instance and the VLANs it carries, which Dell requires to be the same at every node of the ring, with the result that the frame is carried only on a ring that reaches the egress node; identifying the common rings from the per-ring VLAN membership rather than from a table of nodes is an insubstantial difference.

145. **"select, responsively to a respective value of at least one of the header fields of the packet, a ringlet of a communication ring among the one or more common communication rings."** The packet's VLAN determines which protection instance, and so which blocked link, governs it. Dell states: "In the per VLAN ring, multiple instances may be configured and the administrator can define the protected VLANs for each instance." N-Series User's Configuration Guide 6.7.0, ch. 26, "Ethernet Ring Protection," p. 1046 (cited above). G.8032 ties the block to the VLANs of the instance: "Each ERP instance shall only block or unblock the VIDs of the traffic channels of the set of VLANs assigned for protection by that ERP instance." G.8032, clause 9.4. The selection is made for each frame from a value in its header: the VLAN identifier of the frame determines the protection instance that governs it, and hence which link of the ring is blocked for it and in which direction it travels to its egress node. The claim does not require a hash; dependent claim 15 recites one, and claim 14 recites selection responsively to a header field value, which a configured mapping from the VLAN identifier satisfies. On information and belief, this element is met because the VLAN identifier in a frame's header determines the protection instance that governs the frame, each VLAN belonging to one instance only, and the instance determines which link of the ring is blocked for the frame and hence the direction in which it travels to its egress node, as Dell's own sample output of one node running two instances with different blocked points shows. To the extent this element is found not to be literally present, the configured mapping from the VLAN identifier to a ring instance, and therefore to a path around the ring, performs the function of choosing the ring path from a header value, by way of a predefined mapping from the header value to a ring instance, with the result that traffic is distributed over the ring paths by header value; a configured

mapping in place of a computed hash is an insubstantial difference, and hashing is recited only in dependent claims 2 and 15.

146. **“and forward the data packet to the egress ring node over the selected ringlet.”** Dell documents forwarding of data traffic on unblocked ring ports: “Forwarding (unblocked): forwards data traffic and transmits and receives R-APS PDUs.” N-Series User’s Configuration Guide 6.7.0, ch. 26, “Ethernet Ring Protection,” p. 1046 (cited above). An OS6 ring node forwards each frame out of an unblocked ring port toward its destination, within the traffic channel (protected VLAN) to which the frame belongs. On information and belief, this element is met because having resolved the destination to an unblocked ring port within the protection instance that the frame’s VLAN selects, the OS6 ring node transmits the frame out of that port toward the node that serves the destination, which Dell describes as the forwarding of data traffic on an unblocked ring port. To the extent this element is found not to be literally present, once a path has been selected, forwarding the frame over it is the same act, performing the same function (delivering the frame to the ring node that serves its destination) in the same way (transmission over the ring path chosen for that frame) with the same result (the frame reaches the egress ring node over that path), whether the path is called a ringlet of a ring or a direction of travel on a G.8032 ring instance.

147. To the extent any element of the asserted claims of the ’684 Patent is found not to be literally present in the Accused Instrumentalities, that element is present under the doctrine of equivalents, because the corresponding element of the Accused Instrumentalities performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed element, and differs from the claimed element, if at all, only insubstantially from the perspective of a person of ordinary skill in the art.

148. Defendants' acts of direct infringement of the '684 Patent occurred in the United States, including in this District, during the term of the '684 Patent, and injured and damaged Plaintiff. Plaintiff has suffered damages as a result of Defendants' infringement of the '684 Patent during its term. Defendants are liable to Plaintiff under 35 U.S.C. § 284 for past damages in an amount that adequately compensates Plaintiff for Defendants' infringement of the '684 Patent from a date no earlier than six years before the filing of this Complaint through March 2, 2026, but in no event less than a reasonable royalty, together with interest and costs. Because the '684 Patent has expired, Plaintiff does not seek injunctive relief with respect to it.

**COUNT VI**

**INFRINGEMENT OF U.S. PATENT NO. 6,731,607**

149. Plaintiff realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

150. Plaintiff asserts at least claims 1 and 12 of the '607 Patent, which are its independent claims, against at least the PowerEdge MX7000 SmartFabric Products. Claim 1 is an apparatus claim directed to multiplexing apparatus comprising one or more line cards and a switching unit, and is the exemplary claim addressed below. Claim 12 is the method counterpart, which recites coupling a switching unit to interface with the network in accordance with operating configuration parameters stored in the switching unit, linking one or more line cards to communicate with the network through the switching unit, storing backup configuration parameters in at least one of the line cards, and, upon a start-up of the switching unit, receiving the backup configuration parameters from the at least one of the line cards and updating the operating configuration parameters responsive to them; it is practiced whenever a switching module of the PowerEdge MX7000 SmartFabric Products is replaced and brought into service as

described below. Plaintiff's identification of claim 1 as the exemplary claim is without prejudice to its assertion of these and other claims of the '607 Patent in its infringement contentions.

151. The '607 Patent expired on October 19, 2022. Defendants, under 35 U.S.C. § 271(a), directly, literally, and under the doctrine of equivalents, infringed at least claims 1 and 12 of the '607 Patent during its term, and within the six years preceding the filing of this Complaint, by making, using, testing, selling, offering for sale, and importing into the United States the PowerEdge MX7000 SmartFabric Products. Claim 1 is directed to a single apparatus, one or more line cards and a switching unit, which Dell made and sold as a unit: the PowerEdge MX7000 chassis populated with two MX9116n Fabric Switching Engines, with or without MX7116n Fabric Expander Modules, and operated in SmartFabric mode under OME-M. In the mapping set out below, the switching unit is the MX9116n Fabric Switching Engine that is installed as a replacement in an operating SmartFabric, and the line card is the other MX9116n Fabric Switching Engine of that fabric, the module Dell calls the master, together with the Fabric Expander Modules that extend its server-facing ports. Dell shipped and documented the switch replacement capability of SmartFabric mode throughout the damages period. Dell's own release history records that OME-M version 1.00.01 "Manages fabric switch engines in SmartFabric Services mode across all chassis," that version 1.20.00 added an "API to replace failed Ethernet switch," and that version 1.30.00 added an "Ethernet IOM switch replacement wizard for easy replacement of faulty fabric switches." Dell EMC OpenManage Enterprise-Modular Edition for PowerEdge MX7000 Chassis Release Notes, July 2021, Rev. A01 (revision history: A00, April 2021, for version 1.30.00), ch. 3, "New and enhanced features," pp. 8 to 9, https://dl.dell.com/topicspdf/omemrn_en-us.pdf (accessed Sept. 22, 2026). Version 1.20.00 was released in June 2020. Dell EMC OpenManage Enterprise-Modular Edition Version 1.20.00 for

PowerEdge MX7000 Chassis Release Notes, ch. 1, "Release summary," https://dl.dell.com/topicspdf/omem_rn_1_20_00_en-us.pdf (accessed Sept. 22, 2026). Dell itself used the PowerEdge MX7000 SmartFabric Products in the claimed manner, and itself performed the method of claim 12, on information and belief, in the development, testing, validation, demonstration, and support of the SmartFabric switch replacement feature, and Dell directs that the replacement procedure "should be run with Dell Technical Support engaged before starting and throughout the process of IOM replacement." Dell Technologies Info Hub, Dell PowerEdge MX Networking Deployment Guide, "SmartFabric mode IOM replacement process," https://infohub.delltechnologies.com/en-us/l/dell-poweredge-mx-networking-deployment-guide-1/smartfabric-mode-iom-replacement-process-13/ (accessed Sept. 21, 2026).

152. Claim 1 of the '607 Patent recites:

> Multiplexing apparatus for providing access to a high-speed network over a plurality of subscriber lines, comprising: one or more line cards comprising ports to the subscriber lines, at least one of the line cards comprising a volatile memory for storing backup configuration parameters of the apparatus; and a switching unit, comprising: a non-volatile memory, adapted to store operating configuration parameters; a controller, operative to receive the backup configuration parameters stored in the volatile memory and to update the operating configuration parameters in the non-volatile memory responsive to the backup configuration parameters; and a communication interface, over which the switching unit is coupled to communicate with the network in accordance with the operating configuration parameters so as to link the ports of the line cards to the network.

153. The PowerEdge MX7000 SmartFabric Products, as exemplified by the Dell PowerEdge MX7000 chassis with the MX9116n Fabric Switching Engine and the MX7116n Fabric Expander Module in SmartFabric mode, practiced every element of claim 1, as set forth in the following paragraphs.

154. **"Multiplexing apparatus for providing access to a high-speed network over a plurality of subscriber lines, comprising:"** The MX7000 networking modules aggregate the

links of the compute sleds in the chassis onto high-speed uplinks to the data center network. Dell states that the MX9116n's switching architecture provides "25GbE L2 and L3 forwarding capacity to all connected servers." Dell EMC MX9116n Fabric Switching Engine Spec Sheet ("MX9116n Spec Sheet"), https://i.dell.com/sites/csdocuments/Product_Docs/en/DellEMCNetworkingMX9116nSpecSheet.pdf (accessed Sept. 19, 2026). Dell describes the accused mode as aggregation: "In the SmartFabric Services mode, the switches operate as a simple Layer 2 input output aggregation device, which enables complete interoperability with network equipment vendors." Dell OpenManage Enterprise-Modular Edition Version 2.00.00 for PowerEdge MX7000 Chassis User's Guide, February 2023, Rev. A04 (revision history: A00, August 2022, for version 2.00.00) ("OME-M 2.00.00 User's Guide"), ch. 12, "SmartFabric Services," p. 117, https://dl.dell.com/content/manual27467105-dell-openmanage-enterprise-modular-edition-version-2-00-00-for-poweredge-mx7000-chassis-user-s-guide.pdf?language=en-us (accessed Sept. 21, 2026). The '607 Patent is not limited to telephone subscribers or to Digital Subscriber Line ports: dependent claim 2 separately recites Digital Subscriber Line ports, and the specification states that its principles "may similar *[sic]* be applied to substantially any type of network and any multi-card network access system," the sentence opening "Although preferred embodiments are described hereinabove with reference to a DSLAM and an ATM network," and further states that "it is not even necessary that the switching unit and line cards physically occupy a common shelf in an electronic rack, but only that they have the appropriate controllers, memory, and power and data connections to be able to carry out the methods of the present invention." '607 Patent at col. 7, ll. 18–31. The compute sleds of the chassis are the subscribers of the fabric, each reaching the data center network over its own line to the networking modules,

and the modules multiplex those lines onto the uplinks. On information and belief, this element is met because the PowerEdge MX7000 with its networking modules provides the compute sleds of the chassis, which are the subscribers of the fabric, with access to the data center network over a plurality of lines, one from each sled to the networking modules, and multiplexes those lines onto the modules' uplinks, which Dell describes as operating "as a simple Layer 2 input output aggregation device." To the extent this element is found not to be literally present, the MX9116n modules perform the function of giving many attached endpoints shared access to a high-speed network, by aggregating per-endpoint ports through a central switching unit onto network uplinks, with the result that each endpoint reaches the network through the shared apparatus, and that the endpoints are compute sleds reached over chassis links rather than telephone subscribers reached over copper lines is an insubstantial difference in the identity of the endpoint, not in the apparatus.

155. **"one or more line cards comprising ports to the subscriber lines."** The line cards of the apparatus are the MX9116n Fabric Switching Engine of the fabric other than the module being replaced, together with the MX7116n Fabric Expander Modules that extend its server-facing ports. Each MX9116n carries its own ports to the compute sleds: "Sixteen 25GE server-facing ports." Dell EMC SmartFabric OS10 User Guide Release 10.5.2, June 2021, Rev. A05 ("OS10 User Guide 10.5.2"), ch. 11, "PowerEdge MX Ethernet I/O modules," p. 419, https://dl.dell.com/content/manual30421184-dell-emc-smartfabric-os10-user-guide-release-10-5-2.pdf?language=en-us (accessed Sept. 21, 2026). The expander module extends those ports to further sleds: "An FEM takes Ethernet frames from a compute node and sends them to the FSE and from the FSE to the compute node." Dell OpenManage Enterprise-Modular Edition Version 2.20.00 for PowerEdge MX7000 Chassis User's Guide ("OME-M 2.20.00 User's Guide"),

"MX7116n FEM," https://www.dell.com/support/manuals/en-us/poweredge-mx7000/omem_2.20.00_ug/mx7116n-fem?guid=guid-61776e9b-1063-4b64-a866-ea18260b35c3&lang=en-us (accessed Sept. 19, 2026). The compute sleds are the subscribers of the fabric, and the server-facing ports are the ports to the subscriber lines. On information and belief, this element is met because the MX9116n module that remains in service when its peer is replaced comprises sixteen server-facing ports, each of which terminates the line from a compute sled, and the Fabric Expander Modules attached to it carry the frames of further compute sleds to those ports, so that the module, with its expanders, is a line card comprising ports to the subscriber lines. The claim does not require that a line card be incapable of switching; the specification states that the switching unit and the line cards need only have "the appropriate controllers, memory, and power and data connections to be able to carry out the methods of the present invention." '607 Patent at col. 7, ll. 26–31. To the extent this element is found not to be literally present, a switching module that carries subscriber-facing ports performs the function of terminating the subscriber lines and carrying their traffic to and from the switching unit, in the way of a removable module with a port for each subscriber, with the result that each attached sled reaches the network through the shared switching unit; that the module also switches is an insubstantial difference for this element.

156. **"at least one of the line cards comprising a volatile memory for storing backup configuration parameters of the apparatus."** In SmartFabric mode one MX9116n module of the fabric is the master, and the master holds the configuration of the fabric and pushes it to a replacement module. Dell states: "A single MX chassis supports four Ethernet IOMs, where one IOM is the master and the remaining three are members. In a multiple chassis environment, of all the IOMs connected in a scalable fabric, one IOM is the master and the

remaining are members." Dell then states: "When an IOM is replaced, run the sfs_node_replace.py script to push the existing IOM configurations that are done through the smart fabric mode GUI to the new IOM." Dell EMC SmartFabric OS10 User Guide Release 10.5.1 ("OS10 User Guide 10.5.1"), "PowerEdge MX Ethernet I/O modules," "Replace MX Ethernet I/O modules," "Replace an IOM in SmartFabric," https://www.dell.com/support/manuals/en-us/smartfabric-os10-emp-partner/smartfabric-os-user-guide-10-5-1/replace-an-iom-in-smartfabric?guid=guid-ef2b7a03-5256-4328-b9e1-d1235a08736f&lang=en-us (accessed Sept. 22, 2026). Dell shows the roles of the two modules of a fabric as "MASTER" and "BACKUP." Dell EMC PowerEdge MX SmartFabric Configuration and Troubleshooting Guide, September 2019, https://infohub.delltechnologies.com/static/media/client/7phukh/bdcb6a3b-159d-487e-8713-943075bdf7f6.pdf (accessed Sept. 21, 2026), sec. 9.7.2, "show smartfabric cluster," p. 85, and sec. 9.7.3, "show smartfabric cluster member," pp. 85 to 86. The configuration the master holds and pushes is the SmartFabric configuration of the apparatus, and it is a running configuration. Dell states of the accused operating system: "To save new configuration settings across system reboots, copy the running configuration to the startup configuration file." OS10 User Guide 10.5.2, ch. "CLI Basics," "Copy running configuration to startup configuration," p. 85 (cited above). A running configuration that does not survive a reboot unless written to a file is held in volatile memory. Dell requires that the master module be in operation when the replacement is made: "The other IOM in SmartFabric mode must be up, running, and healthy; otherwise a complete traffic outage may occur." Dell Technologies Info Hub, Dell PowerEdge MX Networking Deployment Guide, "SmartFabric mode IOM replacement process" (cited above).

157. On information and belief, this element is met because the MX9116n module that remains in service holds, in its running memory, the SmartFabric configuration of the apparatus from which a replacement switching module is configured, and that module carries sixteen server-facing ports and is a line card within the meaning of the claim; those parameters are backup configuration parameters of the apparatus because they are the copy from which the replacement unit's operating configuration is restored. To the extent this element is found not to be literally present, the copy of the fabric configuration that the master module holds and pushes performs the function of keeping a copy of the apparatus configuration available within the apparatus so that a replacement switching unit can be configured from it without an operator re-entering the parameters, in the way that the copy is held in the working memory of another module of the apparatus that carries subscriber-facing ports, with the result that the replacement unit receives its configuration from within the apparatus; whether the master module also mirrors that working copy to its own storage is an insubstantial difference for this element.

158. **"and a switching unit, comprising: a non-volatile memory, adapted to store operating configuration parameters."** The switching unit is the MX9116n Fabric Switching Engine that is installed as the replacement. Dell states: "The MX9116n FSE contains the switching ASIC and network operating system." OME-M 2.20.00 User's Guide, "MX9116n FSE," https://www.dell.com/support/manuals/en-us/poweredge-mx7000/omem_2.20.00_ug/mx9116n-fse?guid=guid-ed644b72-d7fe-4c03-aa00-401a0928f373&lang=en-us (accessed Sept. 19, 2026). That operating system saves the module's configuration settings in a startup configuration file: "In OS10, the configuration settings are saved in the startup configuration file called startup.xml." OME-M 2.20.00 User's Guide, "Ethernet switch backup instructions," https://www.dell.com/support/manuals/en-us/poweredge-

mx7000/omem_2.20.00_ug/ethernet-switch-backup-instructions?guid=guid-698c921c-4afa-421a-a029-3431574bec8e&lang=en-us (accessed Sept. 19, 2026). A replacement module, once configured, "reboots and is placed in the SmartFabric Services mode," as set out below, and comes up in that mode with the fabric configuration; a configuration that persists across that reboot is held in non-volatile memory, which on information and belief is the module's on-board flash storage. The saved configuration settings are the operating configuration parameters. On information and belief, this element is met because the replacement MX9116n module stores its operating configuration in a startup configuration file that persists across reloads and power cycles and is therefore held in non-volatile memory.

159. **"a controller, operative to receive the backup configuration parameters stored in the volatile memory."** The controller is the control processor of the replacement MX9116n module, on which its network operating system runs. When the replacement is made, the master module pushes the fabric configuration to the new module. Dell states: "Initiate the replacement workflow from the master IOM using the module replacement command." OS10 User Guide 10.5.1, "Replace an IOM in SmartFabric" (cited above). Dell states: "To initiate the module replacement workflow, use the module replacement sfs_node_replace.py command from the master IOM," and "After successful authentication, the system initiates the module replacement workflow and the new IOM reboots and is placed in the SmartFabric Services mode." OS10 User Guide 10.5.1, "Initiate the module replacement workflow," https://www.dell.com/support/manuals/en-ie/networking-mx9116n/smartfabric-os-user-guide-10-5-1/initiate-the-module-replacement-workflow?guid=guid-351d594b-b19d-4750-b366-c4395a616d4e&lang=en-us (accessed Sept. 22, 2026). Dell's fabric guide states the same: "Execute the process of module replacement from the master IOM using the module replacement

command." Dell EMC PowerEdge MX SmartFabric Configuration and Troubleshooting Guide, September 2019 (cited above), sec. 6.8, "Module replacement process in SmartFabric," pp. 54 to 55. The switch replacement wizard that Dell added to OME-M in version 1.30.00 is the operator's front end to that process. Dell scopes it as follows: "With OME-M 1.30.00 and later, Dell PowerEdge MX platform gives you the option to replace the I/O modules in SmartFabric mode in the case of persistent errors or failures and if required through OME-M console." Dell Technologies Info Hub, Dell PowerEdge MX Networking Deployment Guide, "SmartFabric mode IOM replacement process" (cited above). The wizard's steps are "Copy the configurations from the switch to be replaced," and "Apply the settings that were copied from the old switch to the new switch." OME-M 2.20.00 User's Guide, "Replace fabric switch," https://www.dell.com/support/manuals/en-us/poweredge-mx7000/omem_2.20.00_ug/replace-fabric-switch?guid=guid-b7e2802f-aa7a-49d9-aab4-d2ec6af00934&lang=en-us (accessed Sept. 19, 2026). For the manner in which the settings are applied to the new switch, Dell refers the reader to the OS10 User Guide, stating: "For more information about the application of the settings from the switch that is being replaced to the new switch, see the Dell SmartFabric OS10 User Guide." Dell Technologies Info Hub, Dell PowerEdge MX Networking Deployment Guide, "SmartFabric mode IOM replacement process" (cited above). Dell separately exposes switch replacement as a single interface call: "/api/NetworkService/Fabrics(arg1)/Actions/NetworkService.ReplaceSwitch," described as "This URI replaces the fabric switch." and "Replaces fabric switches.," with the privilege "DEVICE_CONFIGURATION." OpenManage Enterprise - Modular Edition Version 2.00.00 RESTful API Guide, August 2022, Rev. A00, "APIs specific to OpenManage Enterprise - Modular Edition," https://www.dell.com/support/manuals/en-us/openmanage-enterprise-

modular/omem_2.00.00_api/apinetworkservicefabricsarg1actionsnetworkservicereplaceswitch?guid=guid-ad6b86fe-b938-4c44-bef3-05381d4addf5&lang=en-us (accessed Sept. 21, 2026). Dell's example request body for that call carries two fields, "NewSwitchServiceTag" and "OldSwitchServiceTag," which Dell describes, in the same guide, as "Service tag of the switch, which will be replaced with faulty switch." and "Service tag of the faulty switch." respectively. Dell documents the same procedure in its chassis management guide, in a list of five items: "To replace a fabric switch, perform the following steps:" "Copy Current Configuration" "Copy the configurations from the switch to be replaced." "Replace Switch Hardware" "Remove the faulty switch from the chassis and replace it with the new switch." "Configure New Switch" "Apply the settings that were copied from the old switch to the new switch." "Update Fabric" "Enter the service tag of the old switch and the new replacement switch to complete the configuration of the SmartFabric." and "Click Finish." OME-M 2.00.00 User's Guide, ch. "SmartFabric Services," "Replacing fabric switch," pp. 121 to 122 (cited above). A replacement MX9116n module thus receives its configuration from the master module of the fabric, on the operator's command, and not from an operator re-entering the parameters.

160. On information and belief, this element is met because the control processor of the replacement MX9116n module, which is within the switching unit, receives the SmartFabric configuration that the master module of the fabric pushes to it from the master module's running memory, and those parameters are the backup configuration parameters stored in the volatile memory of a line card, as set out above. To the extent this element is found not to be literally present because part of the transfer is directed or relayed by the chassis management module, the receipt of the fabric configuration by the replacement module's control processor performs the function of obtaining the apparatus configuration for a newly installed switching unit from a

copy kept elsewhere in the apparatus, in the way of a transfer of the stored parameters to the new unit's controller at installation, with the result that the new unit receives its configuration without manual re-entry; that the transfer is initiated through a management module Dell builds into the same chassis is an insubstantial difference for this element.

161. **"and to update the operating configuration parameters in the non-volatile memory responsive to the backup configuration parameters."** The configuration pushed to the replacement module is written to it so that the module comes up with the fabric configuration after it reboots: "the new IOM reboots and is placed in the SmartFabric Services mode." OS10 User Guide 10.5.1, "Initiate the module replacement workflow" (cited above). The accused operating system saves its configuration settings in "the startup configuration file called startup.xml," as set out above, and the wizard's final steps are to "Configure new switch and apply the settings that were copied from the switch that is being replaced, to the new switch." Dell Technologies Info Hub, Dell PowerEdge MX Networking Deployment Guide, "SmartFabric mode IOM replacement process" (cited above). Dell's description of the other mode confirms that the update occurs: in Full Switch mode, Dell states, "When you remove the faulty IOM in Full Switch mode, the CLI configurations are lost. Reapply the configurations in the new IOM using OS10 CLI," and "A new replacement IOM will have a factory default configuration." Dell Technologies Info Hub, Dell PowerEdge MX Networking Deployment Guide, "Full Switch mode IO module replacement process," https://infohub.delltechnologies.com/en-us/l/dell-poweredge-mx-networking-deployment-guide-1/full-switch-mode-io-module-replacement-process-6/ (accessed Sept. 21, 2026). In SmartFabric mode, by contrast, the replacement module comes up in the fabric with the configuration the master pushed to it, so its stored configuration is no longer the factory default but the fabric configuration, and it retains that configuration

across the reboot that Dell describes. On information and belief, this element is met because the replacement module's operating configuration, held in its non-volatile startup configuration, is updated responsively to the fabric configuration pushed to it by the master module, which is the backup configuration, so that the module enters service on that configuration after its reboot. To the extent this element is found not to be literally present, the replacement MX9116n's update of its own stored configuration during the SmartFabric replacement, which ends with the new module carrying the configuration of the fabric, performs the function of bringing a replacement switching unit into service with the configuration of the unit it replaces, in the way that the received parameters are written into the unit's non-volatile configuration store, with the result that the replacement unit operates with the restored configuration.

162. **"and a communication interface, over which the switching unit is coupled to communicate with the network in accordance with the operating configuration parameters so as to link the ports of the line cards to the network."** The replacement MX9116n's uplink ports connect the fabric to the data center network under the configuration the module received: "In addition to 16 internal 25GbE ports, the MX9116n provides four QSFP28 100GbE ports for uplinks." MX9116n Spec Sheet (cited above). In SmartFabric mode "the switches operate as a simple Layer 2 input output aggregation device," as set out above, aggregating the server-facing ports of the fabric onto those uplinks. Dell's requirement that the other module be "up, running, and healthy; otherwise a complete traffic outage may occur," as set out above, reflects that the two modules carry the fabric's traffic together. On information and belief, this element is met because the replacement module's uplinks, operating under its restored configuration, link the server-facing ports of the master module and its expanders to the data center network. To the extent this element is found not to be literally present, the uplinks of the replacement module

perform the function of coupling the apparatus to the network under the unit's operating configuration so that the subscriber-facing ports of the line cards reach the network, in the way of network-facing interfaces on the switching unit carrying the aggregated traffic of those ports, with the result that each subscriber port is linked to the network through the switching unit.

163. To the extent any element of the asserted claims of the '607 Patent is found not to be literally present in the Accused Instrumentalities, that element is present under the doctrine of equivalents, because the corresponding element of the Accused Instrumentalities performs substantially the same function, in substantially the same way, to achieve substantially the same result as the claimed element, and differs from the claimed element, if at all, only insubstantially from the perspective of a person of ordinary skill in the art.

164. Defendants' acts of direct infringement of the '607 Patent occurred in the United States, including in this District, during the term of the '607 Patent, and injured and damaged Plaintiff. Plaintiff has suffered damages as a result of Defendants' infringement of the '607 Patent during its term. Defendants are liable to Plaintiff under 35 U.S.C. § 284 for past damages in an amount that adequately compensates Plaintiff for Defendants' infringement of the '607 Patent from a date no earlier than six years before the filing of this Complaint through October 19, 2022, but in no event less than a reasonable royalty, together with interest and costs. Because the '607 Patent has expired, Plaintiff does not seek injunctive relief with respect to it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A. A judgment that Defendants have directly infringed, either literally or under the doctrine of equivalents, each of the Asserted Patents during its respective term,

and, with respect to the ’303, ’931, and ’673 Patents, continue to directly infringe those patents;

B. A judgment that Defendants have actively induced infringement of each of the ’303, ’931, and ’673 Patents and continue to induce infringement of those patents;

C. A judgment that Defendants have contributorily infringed each of the ’303, ’931, and ’673 Patents and continue to contributorily infringe those patents;

D. A judgment and order requiring Defendants to pay Plaintiff damages under 35 U.S.C. § 284 adequate to compensate Plaintiff for Defendants’ infringement, in no event less than a reasonable royalty, including without limitation damages on convoyed and derivative sales, together with supplemental damages for any continuing post-verdict infringement of the ’303, ’931, and ’673 Patents through entry of final judgment, with an accounting as needed;

E. A judgment that Defendants’ infringement of the ’303, ’931, and ’673 Patents since the filing of this Complaint has been and is willful, and an award of enhanced damages up to three times the amount found or assessed for that willful infringement, pursuant to 35 U.S.C. § 284;

F. A judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and an award to Plaintiff of its reasonable attorneys’ fees;

G. A judgment granting a permanent injunction under 35 U.S.C. § 283 restraining and enjoining Defendants, their officers, directors, agents, servants, employees, attorneys, parents, subsidiaries, affiliates, successors, and assigns, and all persons in active concert or participation with any of them, from directly or indirectly infringing the ’303, ’931, and ’673 Patents for the remainder of their respective

terms, or, in the alternative, a judgment and order awarding Plaintiff a compulsory ongoing royalty for any continuing infringement of those patents;

H. An accounting of all infringing sales and revenues, and an award of supplemental damages for any infringement or damages not presented at trial;

I. An award of pre-judgment and post-judgment interest on all damages awarded, at the maximum rate permitted by law;

J. An award to Plaintiff of its costs of suit; and

K. Such other and further relief, at law or in equity, as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff High IQ Networks LLC hereby demands a trial by jury on all claims and issues so triable.

Dated: September 22, 2026

Respectfully submitted,

/s/ Erick S. Robinson
Erick S. Robinson (Lead Counsel)
Texas Bar No. 24039142
Gregory Love
Texas Bar No. 24013060
CHERRY JOHNSON SIEGMUND JAMES PC
104 E Houston Street, Suite 115
Marshall, Texas 75670
Tel: (713) 498-6047
Fax: (713) 583-9737
erobinson@cjsjlaw.com
glove@cjsjlaw.com

Mark D. Siegmund
Texas Bar No. 24117055
"Grace" Shuya Yang
Texas Bar No. 24144144
CHERRY JOHNSON SIEGMUND JAMES PC
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas 76710
Tel: (254) 732-2242
Fax: (866) 627-3509
msiegmund@cjsjlaw.com
gyang@cjsjlaw.com

*Attorneys for Plaintiff*
*High IQ Networks LLC*